IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HEIDELBERG USA, INC.,

               Plaintiff,

          v.

SCREENTONE SYSTEMS, CORPORATION,
ACACIA PATENT ACQUISITION
CORPORATION, ACACIA RESEARCH
CORPORATION, and PAUL S. SNYPP,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CIVIL ACTION NO. 07-601-GMS**

**DECLARATION OF STEVEN F. MEYER IN
SUPPORT OF PLAINTIFF HEIDELBERG'S RESPONSE TO
DEFENDANTS' MOTION TO STAY
OR TRANSFER PENDING RESOLUTION OF ISSUES
BY THE EASTERN DISTRICT OF TEXAS,
OR, IN THE ALTERNATIVE, MOTION TO DISMISS**

I, Steven F. Meyer, state and declare as follows:

1.     I am a partner in the law firm of Morgan & Finnegan, LLP and have been retained as

counsel for Defendant Heidelberg USA, Inc. in this litigation.

2.     Attached as Exhibit 1 is a true and correct copy of a record obtained via the internet from

the U.S.P.T.O. assignment database, which shows three assignments recorded with

respect to the '809 patent:   (i) a September 6, 1990 assignment from Craig Louis

Surbrook ("Inventor Surbrook") to SeeColor Corporation ("SeeColor"), (ii) an August 3,

2005 assignment from Paul S. Snypp ("Mr. Snypp") to Acacia Patent Acquisition

Corporation ("Acacia"), and (iii) a June 18, 2007 assignment from Acacia to Screentone

1

Systems Corporation ("Screentone"). According to this record, no other assignments have been recorded relating to the '809 patent.

3.      Attached as Exhibit 2 is a true and correct copy of an assignment from Mr. Snypp to Acacia, executed in Washington State on August 3, 2005, which assigns his entire right, title, and interest in the '809 patent. This assignment is recorded in the records of the U.S. Patent and Trademark Office as relating to the '809 patent.

4.      Attached as Exhibit 3 is a true and correct copy of an assignment from Acacia to Screentone, executed on June 18, 2007, which assigns Acacia's entire right, title, and interest in the '809 patent. This assignment is recorded in the records of the U.S. Patent and Trademark Office as relating to the '809 patent.

5.      Attached as Exhibit 4 is a true and correct copy of records obtained from the Washington Secretary of State which show that Paul S. Snypp filed as a secured creditor against SeeColor Corporation on April 23, 1990, and filed continuations on January 25, 1995, and October 27, 1999.

6.      Attached as Exhibit 5 is a true and correct copy of an application for small entity status, obtained from the file history of U.S. patent application serial number 07/521,080, submitted by Paul S. Snypp on behalf of SeeColor Corporation. The application indicates that Paul S. Snypp is the President and CEO of SeeColor Corporation.

7.      Attached as Exhibit 6 is a true and correct copy of a record obtained from the Washington Secretary of State, which identifies Paul Snypp as the Registered Agent for SeeColor

2

Corporation. The record indicates that SeeColor Corporation is inactive and that its license expired on June 30, 2004.

8.    Attached as Exhibit 7 is a true and correct copy of Repossession and Disposition Agreement entered into between SeeColor Corporation and Paul S. Snypp, executed by Paul S. Snypp on August 2, 2005. This agreement was filed as an exhibit by Screentone Systems Corporation on or about October 16, 2007, in the United States District Court for the Eastern District of Texas, Marshall Division.

9.    Attached as Exhibit 8 is a true and correct copy of an Agreement entered into between Paul S. Snypp and Acacia Patent Acquisition Corporation, executed on October 21, 2003. This agreement was filed as an exhibit by Screentone Systems Corporation on or about October 16, 2007, in the United States District Court for the Eastern District of Texas, Marshall Division.

10.    Attached as Exhibit 9 is a true and correct copy of Plaintiff's Opposition to Defendants' Motions to Dismiss or Transfer filed by Screentone Systems Corporation on or about October 16, 2007, in the United States District Court for the Eastern District of Texas, Marshall Division.

11.    Attached as Exhibit 10 is a true and correct copy of Plaintiff's Surreply in Opposition to Defendants' Motions to Dismiss or Transfer filed by Screentone Systems Corporation on or about October 30, 2007, in the United States District Court for the Eastern District of Texas, Marshall Division.

1111449 v1

12.    Attached as Exhibit 11 is a true and correct copy of Section 62A.9A-619 of the Revised Code of Washington, which was retrieved from a Westlaw database.

13.    Attached as Exhibit 12 is a true and correct copy of the SeeColor Corporation Board of Directors Meeting Minutes for a meeting on October 8, 2003, filed as an exhibit by Screentone Systems Corporation on or about October 16, 2007, in the United States District Court for the Eastern District of Texas, Marshall Division.  At this meeting, the Board voted in favor of granting payment on Paul Snypp's secured note against SeeColor Corporation.

14.    Attached as 13 is a true and correct copy of a record from the Washington State Department of Licensing regarding NewsColor LLC.  This record was retrieved from the Washington State Department's website.  The record indicates that the Governing People of NewsColor LLC are Karen C. Barr, Paul Snypp, and Ronald D. LaForge.

15.    Attached as Exhibit 14 is a true and correct copy of a record obtained via the internet from the Delaware Secretary of State's website, indicating that Screentone Systems Corporation is a Delaware corporation.

16.    Attached as Exhibit 15 is a true and correct copy of a record obtained via the internet from the Delaware Secretary of State's website, indicating that Acacia Patent Acquisition Corporation is a Delaware corporation.

17.    Attached as Exhibit 16 is a true and correct copy of a record obtained via the internet from the Delaware Secretary of State's website, indicating that Acacia Research Corporation is a Delaware corporation.

4

The statements above are made based on my own knowledge and my personal review of the public record, including the attached exhibits.

December 10, 2007
_____
Date

_Steven F. Meyer_
Steven F. Meyer

# EXHIBIT 1

Case 1:07-cv-00601-GMS-LPS    Document 20-2    Filed 12/10/2007    Page 2 of 40
USPTO Assignments on the Web
Page 1 of 1

 **United States Patent and Trademark Office** 

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Assignments on the Web > Patent Query

# Patent Assignment Abstract of Title

## *NOTE:Results display only for issued patents and published applications. For pending or abandoned applications please consult USPTO staff.*

### Total Assignments: 3
**Patent #:** 5166809    **Issue Dt:** 11/24/1992    **Application #:** 07521080    **Filing Dt:** 05/08/1990
**Inventor:** CRAIG L. SURBROOK
**Title:** APPARATUS AND METHODS FOR DIGITAL HALFTONING

### Assignment: 1
**Reel/Frame:** 005442/0341    **Recorded:** 09/13/1990    **Pages:** 3
**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST.
**Assignor:** SURBROOK, CRAIG L.    **Exec Dt:** 09/06/1990
**Assignee:** SEECOLOR CORPORATION, 34004 - 16TH PLACE SOUTH, FEDERAL WAY, WA 98003
**Correspondent:** CHRISTENSEN, O'CONNOR,
JOHNSON & KINDNESS
2800 PACIFIC FIRST CENTRE
1420 FIFTH AVE.
SEATTLE, WA 98101

### Assignment: 2
**Reel/Frame:** 017125/0274    **Recorded:** 10/25/2005    **Pages:** 3
**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
**Assignor:** SNYPP, PAUL S.    **Exec Dt:** 08/03/2005
**Assignee:** ACACIA PATENT ACQUISITION CORPORATION
500 NEWPORT CENTER DRIVE, 7TH FLOOR
NEWPORT BEACH, CALIFORNIA 92660
**Correspondent:** CHERYL WILLEFORD
500 NEWPORT CENTER DRIVE
NEWPORT BEACH, CA 92660

### Assignment: 3
**Reel/Frame:** 019588/0123    **Recorded:** 07/16/2007    **Pages:** 3
**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
**Assignor:** ACACIA PATENT ACQUISITION CORPORATION    **Exec Dt:** 06/18/2007
**Assignee:** SCREENTONE SYSTEMS CORPORATION
500 NEWPORT CENTER DRIVE, 7TH FLOOR
NEWPORT BEACH, CALIFORNIA 92660
**Correspondent:** CHERYL WILLEFORD
500 NEWPORT CENTER DRIVE, 7TH FLOOR
NEWPORT BEACH, CA 92660

Search Results as of: 12/06/2007 04:06 PM
If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.0.1
Web interface last modified: April 20, 2007 v.2.0.1

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

http://assignments.uspto.gov/assignments/q?db=pat&qt=pat&reel=&frame=&pat=5166809&pub=...    12/6/2007

# EXHIBIT 2

## ASSIGNMENT

WHEREAS, PAUL S. SNYPP, an individual having an address at 31606 45th Place SW, Federal Way, WA 98023-2188 (hereafter, together with any successors, legal representatives or assigns thereof, called "ASSIGNOR") is the owner of the entire right, title, and interest and assignee of U.S. Patent No. 4924301, issued on May 8, 1990, for an invention entitled Apparatus and Methods for Digital Halftoning and U.S. Patent No. 5166809, issued on November 24, 1992, for an invention entitled Apparatus and Methods for Digital Halftoning;

AND WHEREAS, ACACIA PATENT ACQUISITION CORPORATION, a Delaware corporation having a place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, California 92660 (hereafter, together with any successors, legal representatives or assigns thereof, called "ASSIGNEE") wants to acquire the entire right, title and interest in and to said U.S. Patent Nos. 4924301 and 5166809, and all the inventions therein, and ASSIGNOR is willing to enter into such assignment.

NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00) in hand paid and other good and valuable consideration the receipt of which from ASSIGNOR is hereby acknowledged, ASSIGNOR has sold, assigned, transferred and set over, and does hereby sell, assign, transfer and set over to ASSIGNEE the entire right, title and interest in and to U.S. Patent Nos. 4924301 and 5166809, and all continuations, divisions, reexaminations, reissues and substitutes thereof, all inventions therein, including without limitation all rights to claim priority on the basis thereof, and any and all applications for patents which are or may hereafter be filed for this invention in any foreign country and all patents which may be granted on these inventions in any foreign country, and all extensions, renewals, and reissues thereof;

ASSIGNOR hereby covenants that it has full right to convey the entire interest herein assigned, and that it has not executed, and will not execute, any agreement in conflict with this Assignment;

ASSIGNOR hereby further covenants and agrees that it will communicate to ASSIGNEE any and all facts known to it respecting said patents, and testify in any legal proceeding, sign all lawful papers, execute and deliver all papers and take any actions that may be necessary or desirable to perfect the title to any aforementioned patents and inventions, execute all divisional, continuation, reexamination, reissue and substitute applications, and make all rightful oaths and generally do everything possible to aid ASSIGNEE to obtain and enforce proper patent protection for said inventions in all countries.

**ASSIGNMENT**

IN TESTIMONY WHEREOF, I hereunto set my hand this 3rd day of Aug,
20 05.

PAUL S. SNYPP
ASSIGNOR

By _Paul S. Snypp_

Name _Paul S. Snypp_

Title _Owner_

STATE OF WA    )
COUNTY OF King    )

On Aug 3 2005 , before me Christine Hune Munson
Notary Public, personally appeared Paul S Snypp
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person
whose name is subscribed to the within instrument and acknowledged to me that he executed the
same in his authorized capacity, and that by his signature on the instrument the person, or the entity
upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Christine Hune Munson
Signature of Notary

RECORDED: 10/25/2005

PATENT
REEL: 017125 FRAME: 0276

# EXHIBIT 3

### ASSIGNMENT

**WHEREAS, ACACIA PATENT ACQUISITION CORPORATION,** a Delaware corporation having a place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, California 92660 (hereafter, together with any successors, legal representatives or assigns thereof, called "ASSIGNOR") is the owner of the entire right, title, and interest and assignee of **U.S. Patent Nos. 4,924,301** and **5,166,809** for apparatus and methods for digital halftoning (collectively, the "**Patents**");

**AND WHEREAS, SCREENTONE SYSTEMS CORPORATION,** a Delaware corporation having a place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, California 92660 (hereafter, together with any successors, legal representatives or assigns thereof, called "ASSIGNEE") wants to acquire ASSIGNOR's entire right, title and interest in and to the Patents, and all the inventions therein, and ASSIGNOR is willing to enter into such assignment.

**NOW, THEREFORE,** in consideration of the sum of One Dollar ($1.00) in hand paid and other good and valuable consideration the receipt of which from ASSIGNEE is hereby acknowledged, ASSIGNOR has sold, assigned, transferred and set over, and does hereby sell, assign, transfer and set over to ASSIGNEE, ASSIGNOR's entire right, title and interest in and to the Patents, and all continuations, divisions, reexaminations, reissues and substitutes thereof, all inventions therein, including without limitation all rights to claim priority on the basis thereof, and any and all applications for patents which are or may hereafter be filed for this invention in any foreign country and all patents which may be granted on these inventions in any foreign country, and all extensions, renewals, and reissues thereof;

**ASSIGNOR** hereby covenants that it has full right to convey the entire interest herein assigned, and that it has not executed, and will not execute, any agreement in conflict with this Assignment;

**ASSIGNOR** hereby further covenants and agrees that it will communicate to ASSIGNEE any and all facts known to it respecting said patents, and testify in any legal proceeding, sign all lawful papers, execute and deliver all papers and take any actions that may be necessary or desirable to perfect the title to any aforementioned patents and inventions, execute all divisional, continuation, reexamination, reissue and substitute applications, and make all rightful oaths and generally do everything possible to aid ASSIGNEE to obtain and enforce proper patent protection for said inventions in all countries.

**ASSIGNMENT**

**IN TESTIMONY WHEREOF,** I hereunto set my hand this 18th day of June, 2007.

ACACIA PATENT ACQUISITION CORPORATION

By _~signature~_

Name _Robert L. Harris II_

Title _President_

STATE OF        CA        )
COUNTY OF   Orange   )

On __June 18, 2007__, before me __Peggy Farney__, Notary Public, personally appeared __Robert Lee Harris III__ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

PEGGY FARNEY
Commission # 1430656
Notary Public - California
Orange County
My Comm. Expires Jul 14, 2007

WITNESS my hand and official seal.

__~signature~__
Signature of Notary

RECORDED: 07/16/2007

PATENT
REEL: 019588 FRAME: 0125

# EXHIBIT 4

PLEASE TYPE WORD

1. DEBTOR(S): (or assignor(s))
(last name first, and address(es))

SeeColor Corporation
34604-16th Avenue South
Federal Way, WA 98003

TRADE NAME:
(if any)

2. FOR OFFICE USE ONLY

APR 23 AM 8 00

DEPT. OF LICENSING
OLYMPIA, WA

90-113-0953

3. SECURED PARTY(IES) (or assignee(s)) (name and address)

Paul S. Snypp
31000 39th Avenue S.W.
Federal Way, WA 98023

4. ASSIGNEE(S) OF SECURED PARTY(IES)
(if applicable)
(last name first, and address(es))

5. CHECK IF APPLICABLE:
☒ Products of collateral are also covered.

☒ Filing covers a security interest in collateral, including fixtures, of a TRANSMITTING UTILITY and remains effective until terminated.

6. NUMBER OF ADDITIONAL SHEETS PRESENTED:

For International Purposes Only:
Check Box if Filing Covers Container/Goods ☒

COPY 1 - FILING OFFICER - INDEX                    WASHINGTON UCC -1

APPROVED BY WASHINGTON
STATE DEPARTMENT OF LICENSING

7. This FINANCING STATEMENT covers the following types or items of property:

Equipment, supplies, tangible and intangible products, products,
chattels, patents, trade secrets and any accounts payable.

8. RETURN ACKNOWLEDGMENT COPY TO:

Paul S. Snypp
31000 39th Avenue S.W.
Federal Way, WA 98023

FILE WITH:
UNIFORM COMMERCIAL CODE DIVISION
DEPARTMENT OF LICENSING
P.O. BOX 9660
OLYMPIA, WA 98504

FOR OFFICE USE ONLY

9. This statement is signed by the Secured Party(ies) instead of the Debtor(s) to perfect a security interest in collateral. (Please check appropriate box.)

(a) ☐ already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or

(b) ☐ which is proceeds of the original collateral described above in which a security interest was perfected, or

(c) ☐ as to which the filing has lapsed, or

(d) ☐ acquired after a change of name, identity, or corporate structure of the debtor(s).

Complete fully if box (d) is checked.
Complete as applicable for (a), (b), and (c)

Original filing number _____

Filing office where filed _____

Former name of debtor(s) _____

10.                                                USE IF APPLICABLE:

Craig L. Surbrook                              Paul S. Snypp
TYPE NAME(S) OF DEBTOR(S) (or assignor(s))     TYPE NAME(S) OF SECURED PARTY(IES) (or assignee(s))

SIGNATURE(S) OF DEBTOR(S) (or assignor(s))     SIGNATURE(S) OF SECURED PARTY(IES) (or assignee(s))

WASHINGTON UCC                                 FORM APPROVED FOR USE IN THE STATE OF WASHINGTON

PLEASE TYPE FORM
This CHANGE STATEMENT is presented for filing pursuant to the WASHINGTON UNIFORM COMMERCIAL CODE, Code Limits and Processes and Preparer statutes.
IF LEASE — The terms debtor and secured party are to be construed as LESSEE and LESSOR
IF CONSIGNMENT — The terms debtor and secured party are to be construed as CONSIGNEE and CONSIGNOR
IF CROP LIEN — The terms debtor and secured party are to be construed as LIEN DEBTOR and LIENHOLDER CLAIMANT
IF PROCESSOR AND PREPARER LIEN FOR AGRICULTURAL PRODUCTS — The term debtor is to be construed as preparer, consignor, or processor. The term secured party is to be construed as PRODUCER
IF A CROP LIEN OR PREPARER OR PROCESSOR LIEN FOR AGRICULTURAL PRODUCTS — The term financing statement shall be construed as STATEMENT

| 1. DEBTOR(S) (or assignor) : (last name first, and address(es) ) | 2. FOR OFFICE USE ONLY |
|---|---|
| SeeColor Corporation<br>34004 - 16th Avenue South<br>Federal Way, WA  98003 | 95-025-0391 |

TRADE NAME SeeColor
(if any)                                           12

| 3. SECURED PARTY(IES) (or assignee(s) ) (name and address) | 4. ASSIGNEE(S) of SECURED PARTY(IES) (if applicable) (last name first, and address(es) ) |
|---|---|
| Paul S. Snypp<br>31000 39th Avenue S.W.<br>Federal Way, WA  98023 | |

| 5. This statement refers to original FINANCING STATEMENT number  90-113-0955 | Date 4-23-90 |

7  ☒ CONTINUATION. The original financing statement between the foregoing Debtor(s) and Secured Party(ies), bearing file number above is still effective

☐ FULL ASSIGNMENT. All of the Secured Party's rights under the financing statement bearing file number above have been assigned to the Assignee(s) whose NAME(S) AND ADDRESS(ES) APPEAR ABOVE.

☐ PARTIAL ASSIGNMENT. The Secured Party's rights under the financing statement bearing file number shown above to the property DESCRIBED BELOW have been assigned to the Assignee(s) whose NAME(S) AND ADDRESS(ES) APPEAR ABOVE.

☐ AMENDMENT. Financing statement bearing file number shown above is amended AS SET FORTH BELOW.

☐ PARTIAL RELEASE. Secured Party(ies) releases the collateral DESCRIBED BELOW from the financing statement bearing file number shown above

☐ TERMINATION. Secured Party(ies) no longer claims a security interest under the financing statement bearing file number shown above

DESCRIPTION

8  NUMBER OF ADDITIONAL SHEETS ATTACHED
9

| TYPE NAME(S) OF DEBTOR(S) (or assignor) : | TYPE NAME(S) OF SECURED PARTY(IES) (or assignee) :<br>Paul S. Snypp |
|---|---|
| SIGNATURE(S) OF DEBTOR(S) (or assignor) :<br>(Required if amendment) | SIGNATURE(S) OF SECURED PARTY(IES) (or assignee) : |

10  RETURN ACKNOWLEDGEMENT COPY TO

Paul S. Snypp
31000 - 39th Ave. S.W.
Federal Way, WA  98023

COPY 3 FILING OFFICER NUMERIC

FILE WITH
UNIFORM COMMERCIAL CODE DIVISION
DEPARTMENT OF LICENSING
PO BOX 9660
OLYMPIA, WA  98504
OR
IF FUTURE FILING
COUNTY AUDITOR OF COUNTY WHERE
ORIGINAL FILING WAS MADE

FOR OFFICE USE ONLY

FORM APPROVED FOR USE IN THE STATE OF WASHINGTON
WASHINGTON UCC-3

WASHINGTON LEGAL BLANK, INC.

**UCC-3** 32650

PLEASE TYPE FORM
This CHANGE STATEMENT is presented for filing pursuant to the WASHINGTON UNIFORM COMMERCIAL CODE. Crop Liens and Processor and Preparer statutes
IF LEASE — The terms Debtor and secured party are to be construed as LESSEE AND LESSOR
IF CONSIGNMENT — The terms debtor and secured party are to be construed as CONSIGNEE AND CONSIGNOR
IF CROP LIEN — The terms debtor and secured party are to be construed as LIEN DEBTOR and LIENHOLDER CLAIMANT
IF PROCESSOR AND PREPARER LIEN FOR AGRICULTURAL PRODUCTS — The terms debtor is to be construed as Producer, Consignee, or producer. The term
secured party is to be construed as PRODUCER
IF A CROP LIEN OR PREPARER OR PROCESSOR LIEN FOR AGRICULTURAL PRODUCTS — The term financing statement shall be construed as STATEMENT
EVIDENCING LIEN

FILED 8:00 AM
'99 OCT 27

1. DEBTOR(S) (or assignor(s))
(last name first, and addresses))

2. FOR OFFICE USE ONLY

SeeColor Corporation
34004 — 16th Avenue S.
Federal Way, WA 98003

1999 - 300 - 0296 DEPT OF LICENSING
OLYMPIA, WA.

TRADE NAME
(if any)

3. SECURED PARTY(IES) (or assignor(s)) (name and address)

Paul S. Snypp
31000 39th Avenue S.W.
Federal Way, WA 98023

4. ASSIGNEE(S) of SECURED PARTY(IES)
(if applicable)
(last name first, and address(es) )

5. This statement refers to original FINANCING STATEMENT number 90-113-0955      Dated 4-23-90

6. FOR OFFICE USE ONLY
1 — FILING OFFICER — INDEX
☐ C    ☐ F-AS    ☐ P-AS    ☐ AM    ☐ PR    ☐ T
WASHINGTON UCC 3

7.
☒ CONTINUATION  The original financing statement between the foregoing Debtor(s) and Secured Party(ies), bearing file number above is still effective.

☐ FULL ASSIGNMENT. All of the Secured Party's rights under the financing statement bearing file number above have been assigned to the Assignee(s) whose
NAME(S) AND ADDRESS(ES) APPEAR ABOVE.

☐ PARTIAL ASSIGNMENT. The Secured Party's rights under the financing statement bearing file number above to the property DESCRIBED BELOW have
been assigned to the Assignee(s) whose NAME(S) AND ADDRESS(ES) APPEAR ABOVE.

☐ AMENDMENT. Financing statement bearing file number shown above is amended AS SET FORTH BELOW.

☐ PARTIAL RELEASE. Secured Party(ies) releases the collateral DESCRIBED BELOW from the financing statement bearing file number shown above

☐ TERMINATION. Secured Party(ies) no longer claims a security interest under the financing statement bearing file number shown above

DESCRIPTION

8. NUMBER OF ADDITIONAL SHEETS ATTACHED

9.

TYPE NAME(S) OF DEBTOR(S) (or assignor(s) )

TYPE NAME(S) OF SECURED PARTY(IES) (or assignee(s) )
Paul S. Snypp

SIGNATURE(S) OF DEBTOR(S) (or assignor(s) )
(Required if amendment)

SIGNATURE(S) OF SECURED PARTY (or assignee )

10. RETURN ACKNOWLEDGEMENT COPY TO

Paul S. Snypp
31000 39th Ave. S.W.
Federal Way, WA 98023

FILE WITH
UNIFORM COMMERCIAL CODE DIVISION
DEPARTMENT OF LICENSING
P O BOX 9660
OLYMPIA WA 98504
OR
IF FIXTURE FILING
COUNTY AUDITOR OF COUNTY WHERE
ORIGINAL FILING WAS MADE

FOR OFFICE USE ONLY

COPY 2 FILING OFFICER NUMERIC

# EXHIBIT 5

*Paper # 3*

Applicant or Patentee: Craig Louis Surbrook

Serial or Patent No: 07/521,080          Attorney Docket No: SEEC-1-5003

Filed: May 8, 1990

Title: APPARATUS AND METHODS FOR DIGITAL HALFTONING

## VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS
### (37 C.F.R. 1.9(f) and 1.27(c)) - SMALL BUSINESS CONCERN

I hereby declare that I am

( )  the owner of the small business concern identified below:

(X)  an official of the small business concern empowered to act on behalf of
the concern identified below:

NAME OF CONCERN _____ SeeColor Corporation _____

ADDRESS OF CONCERN _____ 34004 - 16th Place South, Suite 105 _____

_____ Federal Way, WA  98073 _____

I hereby declare that the above-identified small business concern qualifies as a small
business concern as defined in 13 C.F.R. 121.3-18, and reproduced in 37 C.F.R. 1.9(d), for
purposes of paying reduced fees under Sections 41(a) and (b) of Title 35, United States
Code, in that the number of employees of the concern, including those of its affiliates,
does not exceed 500 persons.  For purposes of this statement, (1) the number of
employees of the business concern is the average over the previous fiscal year of the
concern of the persons employed on a full-time, part-time or temporary basis during each
of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when
either, directly or indirectly, one concern controls or has the power to control the other,
or a third party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed to and remain with
the small business concern identified above with regard to the invention, entitled

_APPARATUS AND METHODS FOR DIGITAL HALFTONING_ _____

_____

_____

by inventor(s)_____

described in

( )  the specification filed herewith

(X )  application Serial No. 07/521,080, filed May 8, 1990

( )  Patent No. _____, issued _____

If the rights held by the above-identified small business concern are not exclusive, each
individual, concern or organization having rights to the invention is listed below* and no
rights to the invention are held by any person, other than the inventor, who could not
qualify as a small business concern under 37 C.F.R. 1.9(d) or by any concern which would
not qualify as a small business concern under 37 C.F.R. 1.9(e) or a nonprofit organization
under 37 C.F.R. 1.9(e).  *NOTE: Separate verified statements are required from each
named person, concern or organization having rights to the invention averring to their

NAME _____

ADDRESS _____
   ( ) INDIVIDUAL ( ) SMALL BUSINESS CONCERN ( ) NONPROFIT ORGANIZATION

NAME _____

ADDRESS _____
   ( ) INDIVIDUAL ( ) SMALL BUSINESS CONCERN ( ) NONPROFIT ORGANIZATION

NAME _____

ADDRESS _____
   ( ) INDIVIDUAL ( ) SMALL BUSINESS CONCERN ( ) NONPROFIT ORGANIZATION

NAME _____

ADDRESS _____
   ( ) INDIVIDUAL ( ) SMALL BUSINESS CONCERN ( ) NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 C.F.R. 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful, false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful, false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING_____Paul S. Snypp_____

TITLE OF PERSON OTHER THAN OWNER__President and CEO_____

ADDRESS OF PERSON SIGNING_____34004 - 15th Place South, Suite 105,_____

Federal Way, WA 98073_____

SIGNATURE _Paul S. Snypp_____ DATE _9/1/90_

# EXHIBIT 6



Enter Keywords

## Corporations

**⚙ CORPORATIONS MENU**

Corporations Home
About Us
Corporations Searc
Registration Forms
Frequently Asked C
Fee Schedule/Expe
One-stop Business
Renewal and Filing
Uniform Commercia
Domestic Partnersh

## Corporations Division - Registration Data Search

### SEECOLOR CORPORATION

| | |
|---|---|
| **UBI Number** | 600627889 |
| **Category** | Regular Corporation |
| **Profit/Nonprofit** | Profit |
| **Active/Inactive** | Inactive |
| **State of Incorporation** | WA |
| **Date of Incorporation** | 06/17/1986 |
| **License Expiration Date** | 06/30/2004 |

**Registered Agent Information**

| | |
|---|---|
| **Agent Name** | PAUL SNYPP |
| **Address** | 31606 45TH PL SW |
| **City** | FEDERAL WAY |
| **State** | WA |
| **ZIP** | 98023 |

**Special Address Information**
**Address**
**City**
**State**
**Zip**

« Return to Search List

**Disclaimer**
Information in the Secretary of State's Online Corporations Database is updated Monday through Frida
5:00 a.m. Pacific Standard Time (state holidays excluded). Neither the State of Washington nor any ag
officer, or employee of the State of Washington warrants the accuracy, reliability, or timeliness of any
information in the Public Access System and shall not be liable for any losses caused by such reliance
accuracy, reliability, or timeliness of such information. While every effort is made to ensure the accurac
information, portions may be incorrect or not current. Any person or entity who relies on information ob
from the System does so at his or her own risk.

Address Confidentiality | Apostilles | Archives | Charitable Trusts & Solicitations | Corporations | Digital
Signatures
Elections & Voting | International Trade | Library | Medals of Merit & Valor | News Releases | Oral
History | Productivity Board
State Flag | State Seal | Washington History

Washington Secretary of State
801 Capitol Way South
PO Box 40234, Olympia WA 98504-0234
(360) 753-7115

Phone Numbers | Privacy Policy | Accessibility

# EXHIBIT 7

## REPOSSESSION AND DISPOSITION AGREEMENT

THIS AGREEMENT is made and entered into this 21st day of October, 2003, by and between SEECOLOR CORPORATION, a Washington corporation, ("Debtor") and PAUL S. SNYPP, as his separate estate, ("Creditor")

## RECITALS

1.  Debtor is in debt to Creditor in the amount of $1,074,922.19 as of July 31, 2003.

2.  To secure the debt, Debtor granted Creditor a security interest in and to the equipment, supplies, tangible and intangible products, products, chattels, patents, trade secrets and accounts. ("Collateral"). The security interest was recorded on April 23, 1990 with the State of Washington Department of Licensing under Uniform Commercial Code Financing Statement No. 90-113-0955, which was subsequently refiled on January 25, 1995 under recording number 95-025-0391 and refiled again on October 27, 1999 under recording number 1999-300-0296

3.  Payment in full for the Debtors' account was on demand. Demand has been made and Debtor is unable to make full payment and is now in default.

4.  Creditor filed suit in the Superior Court of King County under cause No. 03-2-06736-9 KNT seeking the unpaid debt together with foreclosure of the secured interest identified in paragraph 2 above.

5.  Debtor's Board of Directors called a meeting to review the claims of Creditor. It was the decision of the Board that the debt was valid and the interest secured as noted herein. The Board determined that it was in the best interest of the Seecolor Corporation to surrender the assets to Creditor and avoid further cost and losses.

6.  Creditor has proposed to Debtor that Creditor retain the Collateral in satisfaction of the debt owing to Creditor. Debtor desires to consent to such retention of collateral, as is provided under RCW 62A.9A.620, with an agreed acceptance value of $ 1,074,922.19, being all of the debt owed to Creditor. Although the Collateral is valued significantly less than the acceptance value, it is the intention of Debtor and Creditor that the acceptance of the secured collateral fully satisfies any debts and obligations otherwise owing to Creditor. Creditor accepts the secured collateral notwithstanding the value being less than the acceptance value.

NOW, THEREFORE, in consideration of the mutual benefits and forbearances by all parties, receipt and sufficiency being hereby acknowledged, it is mutually agreed as follows:

1.  Retention of Collateral: Pursuant to RCW 62A.9A.620, Creditor shall retain the Collateral as full satisfaction of Debtor's debt obligation owing to Creditor.

REPOSSESSION AND DISPOSITION AGREEMENT - 1

2.  Transfer/Assignment of Interest:  Debtors shall release and assign to Creditor all of Debtor's rights, title and interest in and to the secured collateral by:

    a.  Delivering possession of all personal property owned by Debtor, including all equipment, inventory, supplies, work in process, and any other tangible property and things.  All equipment, inventory and supplies are identified on Exhibit 1 hereto.

    b.  Assigning all rights to the trademarks owned by Debtor, including all trade names, assumed names, and names in reservation within in and outside the State of Washington and the United States of America.  Trademarks and Tradenames are identified on Exhibit 2 hereto.

    c.  Assignment of all patents and patent rights owned by Debtor.  Said patents and patents pending are identified on Exhibit 3 hereto.

All transfers/assignments shall be endorsed by Debtor upon execution of this Agreement.

3.  Waiver:  Pursuant to RCW 62A.9A.624 (a) & (b), Debtor waives any right to notification of disposition of the Collateral and also waives any redemption rights that Debtor may have under RCW 62A.9A.623.  In addition, Debtor waives any sale of the Collateral and acknowledges that this Agreement represents a fair transfer from Debtors to Creditor and a fair disposition.

4.  Acceptance of Collateral as Partial Satisfaction:  Creditor accepts the Collateral in full satisfaction of the Debtors' debt, pursuant to RCW 63A.9A.620:

    a.  Transfers to Creditor all of Debtor's right in and to the Collateral.

    b.  Discharges the security interest held by Creditor, as the secured party.

5.  Waiver of Objection:  Debtor waives any objection to Creditor's retention of Collateral as full satisfaction, as is provided under RCW 62A.9A.600 et.seq.  Debtor is unaware of any other party that has a legal claim to the same Secured Property.

6.  Status of Collateral:  Debtors agree that this is not a consumer goods transaction but rather a commercial transaction.  Creditor accepts the Collateral in its "AS IS" condition, said Collateral being used and possibly in need of substantial repair and refurbishing, or replacement.  Debtor makes no representations or warranties as to the condition of the Collateral, or its usefulness for any purpose.

7.  Transfer of Legal Title:  Debtor hereby transfers legal title to Creditor and Debtor acknowledges a full transfer in accordance with RCW 62A.9A.619:

    a.  That the Debtors cannot pay the amounts due on the debt to Creditor and are therefore in default.

REPOSSESSION AND DISPOSITION AGREEMENT – 2

b.    That Creditor has exercised his post-default remedies with respect to the Collateral;

c.    That by reason of this exercise, Creditor has acquired the rights of the Debtors in the collateral.

8.    <u>Possession:</u>   Creditor is entitled to immediate possession of the Collateral.

9.    <u>Miscellaneous:</u>

a.    This Agreement supersedes all prior oral and written understandings between Creditor and Debtor and represents the exclusive understanding with respect to the disposition of the Collateral.

b.    Debtor may have this Agreement reviewed by counsel of Debtors' choosing prior to signature.

Dated this __3__ day of November, 2003.

CREDITOR:                              DEBTOR:

PAUL S. SNYPP                          SEECOLOR CORPORATION

_____               _____
Paul S. Snypp, Secured Party/Creditor  By: __RONALD D. LAFORGE__
                                       Its:  President

                                       _____
                                       By: __Craig Surbrook__
                                       Its:  Vice President or Secretary

STATE OF _____    )
                            ) ss.
County of _____   )

On this ___ day of November, 2003, personally appeared before me, Paul S. Snypp, to me known to be the individual named in the within and foregoing instrument and acknowledged that he executed this document as his free and voluntary act and deed for the uses and purposes therein mentioned.

                              NOTARY PUBLIC in and for the
                              State of _____
                              Residing at _____
                              My Commission Expires: _____

REPOSSESSION AND DISPOSITION AGREEMENT - 3

# EXHIBIT 8

## AGREEMENT

This agreement ("Agreement") is entered into this **25** day of August, 2005 ("Effective Date"), by and between Paul S. Snypp ("Assignor"), an individual having an address at 31606 45th Place SW, Federal Way, WA 98023-2188, and ACACIA PATENT ACQUISITION CORPORATION ("APAC"), a Delaware corporation having a principal place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660 (collectively referred to herein as the "Parties").

## BACKGROUND

Whereas, Assignor is the sole and exclusive owner of U.S. Patent No(s). 4,924,301 and 5,166,809 and all corresponding patent applications, foreign patents and foreign patent applications, and all continuations, continuations in part, divisions, extensions, renewals, reissues and re-examinations thereof, all of which are set forth on Exhibit A hereto and are collectively referred to as the "Patents" (the "Patents");

Whereas, Assignor desires to sell to APAC all of Assignor's right, title and interest in and to the Patents and APAC in turn, desires to license and enforce the Patents

REDACTED

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and for other good and valuable consideration, Assignor and APAC agree as follows:

1. **ASSIGNMENT**

   1.1.    Effective upon the date hereof, Assignor shall assign, convey, transfer and sell to APAC the entire right, title, and interest in and to the Patents, including without limitation, all rights of Assignor to sue for past, present and future infringement of the Patents, including the right to collect and receive any damages, royalties, or settlements for such infringements, all rights to sue for injunctive or other equitable relief, and any and all causes of action relating to any of the inventions or discoveries described in the Patents, and all goodwill in connection with the foregoing. Assignor shall execute and deliver to APAC a separate Assignment, which is attached hereto as Exhibit B, and such other documents as APAC shall reasonably require to effectuate the transactions contemplated by this Agreement.

REDACTED

REDACTED

REDACTED

3.  REPRESENTATIONS AND WARRANTIES.

   3.1.    Assignor represents and warrants to APAC that, to the best of Assignor's knowledge
          as of the date hereof:

        3.1.1.   Assignor is the sole owner of the Patents and has all right, title, claims,
                 interest and privileges arising from such ownership, free and clear of any
                 liens, security interests, encumbrances, rights or restrictions;

        3.1.2.   the identity of all inventors of the inventions described in the Patents has
                 been fully disclosed to the U.S. Patent Office as required by U.S. law;

        3.1.3.   the Patents and the inventions described in the Patents are (A) not the product
                 or subject of any joint development activity or agreement with any third
                 party; (B) not the subject of any consortia agreement or cross-license; and
                 (C) have not been financed in whole or in part by any third party;

        3.1.4.   except as otherwise set forth herein, the Patents remain in full force and
                 effect as of the Effective Date of this Agreement;

        3.1.5.   except as set forth in the license agreement attached hereto in Exhibit C
                 hereof, Assignor has not assigned, licensed, granted covenants not to sue,
                 transferred or otherwise conveyed to any other person or entity any of its
                 rights, title, claims, interest or privileges with respect to the Patents;

        3.1.6.   Exhibit A includes all patents, patent applications, foreign counterparts, and
                 all continuations, continuations in part, divisions, extensions, renewals,
                 reissues and re-examinations, which are in the same patent family as the
                 Patents;

        3.1.7.   except as otherwise set forth herein, all maintenance fees that have become
                 due with respect to the Patents have been paid in full;

3

3.1.8.  the Patents are not and have not been subject to any action or proceeding concerning their validity, enforceability, inventorship or ownership;

3.1.9.  Assignor has no knowledge of any facts that could give rise to a claim that the Patents are invalid or unenforceable; and Assignor has not engaged in any conduct, or omitted to perform any necessary act, the result of which would invalidate the Patents or preclude their enforceability;

3.1.10. Assignor has all requisite legal and corporate power and authority to enter into this Agreement, to consummate the transactions contemplated hereby, and to carry out and perform its obligations under the terms of this Agreement; and

3.1.11. the execution, delivery, performance of and compliance with this Agreement has not resulted and will not result in any violation of, or conflict with, or constitute a default under (with or without notice or lapse of time, or both), or give rise to a right of termination, cancellation or acceleration of any obligation or loss of any benefit under any agreement to which Assignor is a party.

3.2.    APAC represents and warrants to Assignor that, as of the date hereof:

3.2.1.  APAC is a corporation duly organized and in good standing under the laws of Delaware;

3.2.2.  APAC has authority to enter into this Agreement and implement its terms; and

3.2.3.  the person executing this Agreement on behalf of APAC is duly authorized to do so.

REDACTED

REDACTED

6.  **GOVERNING LAW AND CONSENT TO JURISDICTION**

    6.1.  This Agreement shall be governed by and construed under applicable federal law and the laws of the State of California, excluding any conflict of law provisions. APAC and Assignor each irrevocably consent to the exclusive jurisdiction of any California state or federal court sitting in the Central District of California, over any suit, action or proceeding arising out of or relating to this Agreement. APAC and Assignor hereby waive personal service of any summons, complaint, or other process in any action in any California state or federal court sitting in the Central District of California, and agree that all service thereof may be made by (a) certified or registered mail, return receipt requested, to the other Party's address identified in the opening paragraph of this Agreement; or (b) by such other method authorized by the California Long Arm Statute.

    6.2.  Neither APAC nor Assignor shall be liable for any consequence or damage arising out of or resulting from the manufacture, use or sale of products under the Patents. In no event shall any Party be entitled to special, indirect, consequential damages, including lost profits, or punitive damages for breach of this Agreement.

7.  **CONFIDENTIALITY**

    7.1.  All information provided pursuant to this Agreement, including without limitation, the terms of this Agreement, shall be regarded as confidential information ("Confidential Information"). The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential

Information only for the purposes set forth herein. Assignor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement. Confidential Information shall not include information that: (a) was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure; (b) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving party; or (c) was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

# REDACTED

9. **MISCELLANEOUS**

9.1. All notices or communications which either Party may desire, or be required, to give or make to the other shall be in writing and shall be deemed to have been duly given or made if and when forwarded by registered or certified mail to the address set forth above in this Agreement or to such other address as a Party shall give to the other in writing delivered at the last address specified in the manner prescribed by this Agreement.

9.2. This Agreement shall inure to the benefit of, and be binding upon the respective successors, assigns, heirs, beneficiaries and personal representatives of Assignor and APAC. APAC may assign this Agreement, in whole or in part, to a third party by providing written notice thereof in accordance with the provisions of Section 9.1.

9.3. The failure to act upon any default hereunder shall not be deemed to constitute a waiver of such default.

9.4.  This Agreement constitutes the entire understanding of the Parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties.

9.5.  If for any reason in any jurisdiction in which any provision of this Agreement is sought to be enforced, any one or more of the provisions of this Agreement shall be held invalid, illegal or unenforceable in any respect, such holding shall not affect any other provision of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained therein.

9.6.  This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. A faxed copy of a signature page shall be considered an original for purposes of this Agreement.

9.7.  The headings contained in this Agreement have been inserted for convenient reference only and shall not modify, define, expand or limit any of the provisions of this Agreement.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement on the date first written above.


PAUL S. SNYPP

By: _Paul S. Snypp_

Print Name: _Paul S. Snypp_

Title: _Owner_

Date: _8/2/05_


ACACIA PATENT ACQUISITION CORPORATION

By: _____

Print Name: _Rob Berman_

Title: _CEO_

Date: _8/25/05_

Exhibit A

Patents

| US Patent No. | US Appl. No. | Continuation-in-part of Appl. No. | Issue Date | Title |
|---|---|---|---|---|
| 4,924,301 | 268,951 | | 5/8/1990 | Apparatus and Methods for Digital Halftoning |
| 5,166,809 | 521,080 | 268,951 | 11/24/1992 | Apparatus and Methods for Digital Halftoning |

**Exhibit B**

Assignment

# ASSIGNMENT

**WHEREAS, PAUL S. SNYPP,** an individual having an address at 31606 45th Place SW, Federal Way, WA 98023-2188 (hereafter, together with any successors, legal representatives or assigns thereof, called "ASSIGNOR") is the owner of the entire right, title, and interest and assignee of U.S. Patent No. 4924301, issued on May 8, 1990, for an invention entitled Apparatus and Methods for Digital Halftoning and U.S. Patent No. 5166809, issued on November 24, 1992, for an invention entitled Apparatus and Methods for Digital Halftoning;

**AND WHEREAS, ACACIA PATENT ACQUISITION CORPORATION,** a Delaware corporation having a place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, California 92660 (hereafter, together with any successors, legal representatives or assigns thereof, called "ASSIGNEE") wants to acquire the entire right, title and interest in and to said U.S. Patent Nos. 4924301 and 5166809, and all the inventions therein, and ASSIGNOR is willing to enter into such assignment.

**NOW, THEREFORE,** in consideration of the sum of One Dollar ($1.00) in hand paid and other good and valuable consideration the receipt of which from ASSIGNEE is hereby acknowledged, ASSIGNOR has sold, assigned, transferred and set over, and does hereby sell, assign, transfer and set over to ASSIGNEE the entire right, title and interest in and to U.S. Patent Nos. 4924301 and 5166809, and all continuations, divisions, reexaminations, reissues and substitutes thereof, all inventions therein, including without limitation all rights to claim priority on the basis thereof, and any and all applications for patents which are or may hereafter be filed for this invention in any foreign country and all patents which may be granted on these inventions in any foreign country, and all extensions, renewals, and reissues thereof;

**ASSIGNOR** hereby covenants that it has full right to convey the entire interest herein assigned, and that it has not executed, and will not execute, any agreement in conflict with this Assignment;

**ASSIGNOR** hereby further covenants and agrees that it will communicate to ASSIGNEE any and all facts known to it respecting said patents, and testify in any legal proceeding, sign all lawful papers, execute and deliver all papers and take any actions that may be necessary or desirable to perfect the title to any aforementioned patents and inventions, execute all divisional, continuation, reexamination, reissue and substitute applications, and make all rightful oaths and generally do everything possible to aid ASSIGNEE to obtain and enforce proper patent protection for said inventions in all countries.

## ASSIGNMENT

IN TESTIMONY WHEREOF, I hereunto set my hand this 3rd day of Aug,
20 05.

ASSIGNOR                              PAUL S. SNYPP

By _Paul S. Snypp_____

Name _Paul S. Snypp_____

Title _Owner_____

STATE OF WA          )
COUNTY OF King )

On Aug 3 2005 , before me Christine Hune Munson
Notary Public, personally appeared Paul S Snypp
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person
whose name is subscribed to the within instrument and acknowledged to me that he executed the
same in his authorized capacity, and that by his signature on the instrument the person, or the entity
upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Christine Hune Munson
Signature of Notary

Exhibit C

To: Mr. Lee     From: Karen@newscolor

## NON-EXCLUSIVE LICENSE AGREEMENT

This Non-Exclusive License Agreement ("Agreement") is entered into this 22 day of August, 2005 (the "Effective Date"), by and between Paul S. Snypp ("Licensor"), an individual having an address at 31606 45th Place SW, Federal Way, WA 98023-2188 and Newscolor LLC ("Licensee"), a California corporation having a principal place of business at 2407 E. Charleston Road, Mountain View, CA 94043, (collectively referred to herein as the "Parties").

### BACKROUND

Whereas, pursuant to the Repossession and Disposition Agreement dated October 21, 2003 by and between Licensor and SeeColor Corporation, Licensor obtained sole and exclusive ownership of U.S. Patent Nos. 4,924,301 and 5,166,809 (the "Patents"); and

Whereas, Licensor is willing to grant to Licensee a non-exclusive right and license in the Patents pursuant to the terms and conditions of this Agreement and Licensee in turn, desires to license the Patents for use to conduct its business.

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and for the sum of One Dollar ($1.00) in hand paid and other good and valuable consideration, Licensor and Licensee agree as follows:

1. GRANT

1.1.     Licensor grants to Licensee a limited, non-exclusive, non-transferable, royalty-free, personal right and license under the Patents to make, use, offer or sell products or services solely as required by Licensee to conduct Licensee's Business as defined below (the "License"). The License shall commence as of the Effective Date and terminate in accordance with the provisions of this Agreement. For purposes of this Section 1.1, "Licensee's Business" shall mean only those products and services offered for sale or sold by Licensee as of the Effective Date (the "Products"), including improvements, modifications or extensions of such Products developed solely by Licensee and offered for sale or sold by Licensee thereafter, provided, however, that "Licensee's Business" shall exclude, and the License shall not apply to or otherwise cover, any and all products or services, including without limitation any and all improvements, modifications, and extensions thereof, that are developed, supplied, provided or acquired, in whole or in part, by or from any third parties. Licensee shall mark each Product in a conspicuous manner so as to identify each of the Patents above (e.g., U.S. Patent No. 4924301, U.S. Patent No. 5166809); by way of example without limitation, Licensee shall identify in a conspicuous manner each of the Patents (i) within a splash screen that displays each time an instance of the Product is launched; and (ii) on the respective packaging, user and training manuals of each such Product.

1.2.    Solely in connection with the sale or offer for sale by Licensee of the Products, Licensor hereby grants to Licensee a limited, non-exclusive, non-transferable, royalty-free, personal, restricted right to grant sublicenses under the Patents only to End Users (as defined herein) solely and exclusively as required for such End Users to use the Products (the "Sublicense"). Licensee shall offer and grant each such Sublicense to an End User pursuant to written terms and conditions furnished with the Products (the "EULA") and Licensee shall create and maintain an accurate and complete record of all such EULAs at all times. Each such EULA shall expressly include and state the following restrictions: the End User shall not

(a)    make or distribute copies of the Product, or transfer the Product, provided, however, that the End User may make one copy of the Product for archival or back-up purposes;

(b)    alter, merge, modify, adapt or translate the Product, or decompile, reverse engineer, disassemble, make any attempt to discover the source code or underlying methods of operation of the Product, or otherwise reduce any portion of the Product to a human-perceivable form;

(c)    sell, offer for sale, rent, lease, sublicense or otherwise transfer or assign any portion of the Product;

(d)    share, install or use any portion of the Product concurrently on more than one computer;

(e)    use any portion of the Product, alone or with others, to make, have made, create or develop any software or other technology having the same or similar functions as the Product, including without limitation any use of any portion of the Product in any development or test procedure of any kind, or to determine if such software or other technology performs in a similar manner as the Product.

"End User" shall mean the final or ultimate user of the Product, a party that obtains the Product solely for such party's own personal or business use of the Product subject to the terms, conditions and restrictions of the EULA. Notwithstanding the foregoing, the term "End User" shall exclude any third party (regardless if such third party has entered into a EULA with Licensee) that: (i) directly or indirectly makes, imports, offers for sale, or sells any products, software or services, alone or with others, that would directly or indirectly infringe any claims of the Patents; or (ii) uses the Products to directly or indirectly make, import, offer for sale or sell any products, software or services, alone or with others, that would directly or indirectly infringe any claims of the Patents. For the avoidance of doubt, the Sublicense shall not authorize or otherwise include within its scope any breaches or violations of any of the EULA restrictions set forth herein or any of the activities described in (i) and (ii) above.

1.3. Except for the license granted in Sections 1.1 and 1.2 above, Licensor expressly reserves and retains any and all other rights in or to any of the Patents. Licensee acknowledges and agrees that no other rights or licenses, express or implied, are contemplated or granted herein.

1.4. Provided that Licensee maintains compliance with all of the terms and conditions of this Agreement and as part of the consideration being given to Licensee hereunder, Licensee is relieved from any liability Licensee may have incurred prior to the Effective Date for infringement of the Patents solely by virtue of Licensee's acts, conduct and uses during the period following October 21, 2003 and prior to the Effective Date. Licensee acknowledges and agrees that the provisions of this Section 1.4 are personal to and shall apply solely and exclusively to Licensee as it exists as of the Effective Date and no third party (including without limitation parties that acquire, merge with, or otherwise become affiliated with Licensee) shall be entitled to or otherwise obtain any rights or benefits, in whole or in part, of any of the provisions of this Section 1.4.

## 2. REPRESENTATIONS AND WARRANTIES

2.1. Each Party represents and warrants to the other Party that, as of the date hereof:

2.1.1. It has all requisite legal power and authority to enter into this Agreement, to consummate the transactions contemplated hereby, and to carry out and perform its obligations under the terms of this Agreement; and

2.1.2. the execution, delivery, performance of and compliance with this Agreement has not resulted and will not result in any violation of, or conflict with, or constitute a default under (with or without notice or lapse of time, or both), or give rise to a right of termination, cancellation or acceleration of any obligation or loss of any benefit under any agreement to which it is a party.

2.2. Licensee represents and warrants to Licensor that, as of the date hereof:

2.2.1. Licensee is a corporation duly organized and in good standing under the laws of the State of California;

2.2.2. Licensee has authority to enter into this Agreement and implement its terms; and

2.2.3. the person executing this Agreement on behalf of Licensee is duly authorized to do so.

## 3. TERMINATION

3.1. Licensor may terminate this Agreement in the event that Licensee files for bankruptcy protection under any state or federal bankruptcy law or a petition for

bankruptcy is filed against Licensee and not dismissed within ninety (90) days.

3.2. Either party may terminate this Agreement upon written notice to the other if the other party breaches any material representation, warranty or agreement in this Agreement and fails to cure such breach within thirty (30) days of receipt of such written notice of the alleged breach.

3.3. In the event of any dispute as to whether a party has breached this Agreement or whether a cure has been effected, the matter shall be submitted to litigation pursuant to Section 5 hereof. The License and the Sublicense shall automatically terminate upon any termination or expiration of this Agreement.

4. **ASSIGNMENT**

4.1. This Agreement shall inure to the benefit of, and be binding upon the respective successors, assigns, heirs, beneficiaries and personal representatives of Licensor. Licensor may transfer or assign all or any part of his interest in this Agreement or sell or transfer all or some of the Patents at any time, provided that (i) the transferee or assignee agrees to be bound by the terms of this Agreement in writing; and (ii) Licensor shall continue to be bound by the terms of this Agreement.

4.2. Licensee acknowledges and agrees that: (i) this Agreement, including without limitation all rights and licenses granted hereunder, is personal to Licensee and non-assignable by Licensee; and (ii) no third party may obtain any rights or benefits, in whole or in part, under the License by or through Licensee. Licensee may not assign, transfer or sublicense (except as set forth in Section 1.2 herein), in whole or in part, any of the rights granted hereunder, including without limitation any portion of the License. Any attempt by Licensee to assign, transfer or sublicense (except as set forth in Section 1.2 herein) any portion of the License shall constitute a material breach of this Agreement which cannot be cured by Licensee and such attempted assignment or transfer shall be null and void.

5. **GOVERNING LAW AND CONSENT TO JURISDICTION**

5.1. This Agreement shall be governed by and construed under applicable federal law and the laws of the State of California, excluding any conflict of law provisions. Licensee and Licensor each irrevocably consent to the exclusive jurisdiction of any California state or applicable federal court sitting in California, over any suit, action or proceeding arising out of or relating to this Agreement. Licensee and Licensor hereby waive personal service of any summons, complaint, or other process in any action in any California state or applicable federal court sitting in California, and agree that all service thereof may be made by (a) certified or registered mail, return receipt requested, to the other party's address identified in the opening paragraph of this Agreement; or (b) by such other method authorized by the California Long Arm Statute.

6.  **MISCELLANEOUS**

6.1.  All notices or communications which either party may desire, or be required, to give or make to the other shall be in writing and shall be deemed to have been duly given or made if and when forwarded by registered or certified mail to the address set forth above in this Agreement or to such other address as a party shall give to the other in writing delivered at the last address specified in the manner prescribed by this Agreement.

6.2.  The failure to act upon any default hereunder shall not be deemed to constitute a waiver of such default.

6.3.  This Agreement constitutes the entire understanding of the parties with respect to its subject matter and may not be modified or amended, except in writing by the parties.

6.4.  If for any reason in any jurisdiction in which any provision of this Agreement is sought to be enforced, any one or more of the provisions of this Agreement shall be held invalid, illegal or unenforceable in any respect, such holding shall not affect any other provision of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained therein.

6.5.  This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. A faxed copy of a signature page shall be considered an original for purposes of this Agreement.

6.6.  The headings contained in this Agreement have been inserted for convenient reference only and shall not modify, define, expand or limit any of the provisions of this Agreement.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date first written above.

| Paul S. Snypp | NewsColor LLC |
|---|---|
| By: _Paul S. Snypp_ | By: _Karen Barr_ |
| Print Name: Paul S. Snypp | Print Name: Karen Barr |
| Title: Owner | Title: Director, Sales + Mktg |
| Date: 8/22/05 | Date: 8/22/05 |

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SCREENTONE SYSTEMS CORPORATION, | § § § § § § § § § § § § § § § § § § | |
| Plaintiff, | | |
| | | CIVIL ACTION NO. 2:07cv340-DF |
| v. | | **JURY TRIAL DEMANDED** |
| CANON U.S.A., INC., EASTMAN KODAK COMPANY, PANASONIC CORPORATION OF NORTH AMERICA, RICOH AMERICAS CORPORATION, KONICA MINOLTA PRINTING SOLUTIONS U.S.A., INC., KYOCERA MITA AMERICA, INC., and HEIDELBERG USA, INC., | | |
| Defendants. | | |

## PLAINTIFF'S OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS OR TRANSFER

In lieu of Answers, Defendants filed three motions to dismiss, two of which alternatively seek transfer. Defendants filed concurrently three declaratory judgment actions — two in Delaware and one in Washington state.

These filings amount to little more than an unwarranted, orchestrated effort to force the parties' dispute into a procedural quagmire. Defendants made no attempt to communicate with Plaintiff about the issues they raise. Any attempt at all might have averted this unnecessary waste of the Court's time.

The primary basis for dismissal is that public records do not establish Plaintiff's ownership of the patent-in-suit. Had the Defendants merely asked, Plaintiff would have provided the requisite records.

1

Plaintiff owns all right, title and interest in, and to, the '809 patent and has standing to bring this action. For this reason alone, there is no basis for dismissal and no basis for transfer based on the first-to-file rule. Other issues raised by Defendants involve clerical matters wholly correctable by amendment to Plaintiff's Complaint, which Plaintiff requests be allowed at this early juncture.

Amendment being permitted, no issue remains but for the transfer for convenience sought by certain, but not all, Defendants. Not one, single private or public interest factor favors such transfer. Defendants' motion ignores the well-settled deference that must be accorded Plaintiff's choice of forum and, otherwise, falters in meeting Defendants' heavy burden in justifying a venue change.

## I.    **BACKGROUND**

Plaintiff filed its Complaint on August 7, 2007 alleging that Defendants infringe United States Patent No. 5,166,809 (the "'809 patent"). Defendants each make, sell, and distribute printer and other imaging products which operate to reproduce images by the claimed digital halftoning techniques.

On October 1, 2007, Konica Minolta Business Solutions U.S.A., Inc. ("KM Business") filed a declaratory judgment action in the District of Delaware against Screentone Systems Corp. (Plaintiff here), Acacia Patent Acquisition Corp., Acacia Research Corp., and Paul S. Snypp. Hours later, named-Defendant Konica Minolta Printing Solutions U.S.A., Inc. ("KM Printing") filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1-2, 4-7). KM Printing's motion seeks, alternatively, to transfer this case to the District of Delaware under the first-to-file rule.

The same day, Defendants Canon U.S.A., Inc. ("Canon"), Eastman Kodak Co. ("Kodak"), Panasonic Corporation of North America ("Panasonic"), Ricoh Americas

2

Corporation ("Ricoh"), and Kyocera Mita America, Inc. ("Kyocera") (collectively, "the Canon Defendants") filed a declaratory judgment action in the Western District of Washington against the same four parties sued by KM Business. Similar to KM Business, the Canon Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(7). Their motion seeks transfer in the alternative, under both the first-to-file rule and 28 U.S.C. § 1404(a).

Defendant Heidelberg USA, Inc. ("Heidelberg") filed a third declaratory judgment — the second filed in the District of Delaware. The suit names the same defendants as the others. Heidelberg filed its motion to dismiss under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(7). The Heidelberg motion does not seek transfer.

The three pending motions to dismiss essentially parrot one another, routinely using the same or substantially similar language. In the interest of simplifying the Court's task, Plaintiff chose to address all issues broached by the three separate motions in this single response.

## II.    ARGUMENTS AND AUTHORITIES AGAINST DISMISSAL

### A. Defendants' Motions to Dismiss Should Be Denied for the Reason that Plaintiff Holds Valid Legal Title to the '809 Patent.

Defendants each seek to dismiss this action pursuant to Rule 12(b)(1), alleging that Plaintiff does not have valid or legal title to the '809 patent thereby depriving it of standing and depriving this Court of subject matter jurisdiction. Defendants allege the public record indicates a gap in the '809 patent chain of title, particularly from the original owner, SeeColor Corporation ("SeeColor"), to Paul Snypp.

On September 6, 1990, the '809 patent's inventor, Craig Surbrook, sold, assigned, and transferred to SeeColor his "entire right and title to and interest in" in the patent application that issued two years later as the '809 patent.[1]    Thirteen years later, the SeeColor Board of Directors

---

[1] See Exh. A — Declaration of Edward R. Nelson, III in Support of this Opposition ("Nelson Decl."), at

executed a Repossession and Disposition Agreement[2] in favor of Snypp, a SeeColor founder and director.[3]  SeeColor owed Snypp a substantial corporate debt.  Snypp was a secured creditor in, among other things, all of SeeColor's intellectual property.  Snypp foreclosed on the debt, acquiring the '809 patent in the process.[4]

On August 2, 2005, Snypp sold, assigned, and transferred his complete ownership in the '809 patent to Acacia Patent Acquisition Corporation ("APAC") — including "the right to sue for past, present and future infringement" and "to collect and receive any damages, royalties, or settlements...."[5]  On June 18, 2007, APAC sold, assigned, and transferred its "entire right and interest" in the '809 patent to Plaintiff.[6]

Thus, there exists a complete and unbroken chain of assignments culminating in Plaintiff's ownership.  Because Plaintiff owns indisputable legal title to the '809 patent: (i) Plaintiff maintains standing to bring this suit; (ii) this Court is vested with subject matter jurisdiction; and (iii) Defendants' requested dismissal should be denied.

### B. Screentone Is Entitled to Bring this Action Making Dismissal Under Rule 12(b)(7) Improper.

Defendants' theory for dismissal under Rule 12(b)(7) is premised on Plaintiff lacking the right to sue for past damages, presumably going back six years as permitted under 35 U.S.C. § 286.  Defendants cite *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 n. 7 (Fed. Cir. 1991) for the proposition that patent assignments generally do not convey a right to collect pre-assignment damages.  Rather rights to such damages must be expressly assigned.

---

Exh. 1 (Assignment, Surbrook to SeeColor).
[2] Effective October 21, 2003.
[3] See Exh. B — Declaration of Paul Snypp in Support of this Opposition ("Snypp Decl."), at ¶ 3.
[4] Snypp Decl., at Exh. 1 (SeeColor Board Minutes and Repossession and Disposition Agreement).
[5] Nelson Decl., at Exh. 2 (Agreement and Assignment, Snypp to APAC; signed by Snypp on August 2, 2005 and reflecting an effective date of August 25, 2005).
[6] Nelson Decl., at Exh. 3.

Defendants' argument is misplaced for the reason that Plaintiff has valid legal title to the patent and, thus, has standing to bring this suit. The extent to which Plaintiff can collect pre-assignment infringement damages goes to the issue of damages, not standing.

Plaintiff's Complaint does not state the extent to which it is seeking past damages. Rather, the Complaint states "Plaintiff is the owner of the '809 patent with the exclusive right to enforce the '809 patent against infringers and collect damages for all relevant times, including the right to prosecute this action."[7] Nowhere does the Complaint allege that Plaintiff seeks damages accruing prior to taking ownership. The "relevant" time for Plaintiff to collect past damages is from June 18, 2007 (the date it acquired the '809 patent) forward.[8]

Quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003), Defendants argue that "if the original plaintiff lacked standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing."[9] The case is inapposite here for the simple reason that Plaintiff had standing at the time it filed suit by virtue of its exclusive ownership of the '809 patent. Standing "depends upon the state of things at the time [] the action [is] brought." *Id.* at 1306. Though true that a plaintiff cannot gain standing retroactively, *Id.* at 1310, Plaintiff here does not need to gain standing.

Plaintiff became the complete, legal owner of the '809 patent on June 18, 2007. This action was filed on August 7, 2007. There is no ownership defect; thus, there is no jurisdictional defect.

---

[7] Complaint at ¶ 12.
[8] Nelson Decl., at Exh. 3.
[9] KM Printing Motion at p. 9; Canon Defendants Motion at p. 10; Heidelberg Motion at p. 7.

## C. If an "Indispensable Party" Exists, It Is Acacia Patent Acquisition Corporation, Plaintiff's Parent.

On August 25, 2005, Acacia Patent Acquisition Corporation ("APAC") procured the '809 patent from Paul Snypp, including "the right to sue for past, present and future infringement" and "to collect and receive any damages, royalties, or settlements...."[10] Thus, as of the date APAC took ownership, it held the universe of substantive rights in the '809 patent. No prior owner retained any interest.

Rule 12(b)(7) authorizes dismissal for failure to join a party under Rule 19. Rule 19 governs the joinder of parties needed for just adjudication. Without authority, Defendants argue that just adjudication requires that any party with a right to past damages for infringement be joined. It bears mention that the proper remedy for failure to join a necessary party is not dismissal of the action; rather an opportunity should be given to bring in the necessary party by amendment. *See Keene v. Hale-Halsell Co.*, 118 F.2d 332, 335 (5th Cir. 1941); *see also Maryland Cas. Co. v. Glassell-Taylor & Robinson*, 156 F.2d 519, 523 (5th Cir. 1946) (noting that "[t]he absence of parties who are not indispensable, but who ought to be before the Court, is not, under Rule 19(b) ... grounds for dismissing the complaint when bringing in of such parties will not defeat federal jurisdiction").

On June 18, 2007, APAC sold, assigned, and transferred its "entire right and interest" in the '809 patent to Plaintiff.[11] But due to a mistake in the assignment document, APAC failed to specifically assign its right to seek damages for past infringements. Thus, APAC inadvertently retained the right to seek past damages predating June 18, 2007.[12]

---

[10] Nelson Decl., at Exh. 2.
[11] Nelson Decl., at Exh. 3.
[12] See Exh. D — Declaration of Clayton Haynes on Behalf of Acacia Patent Acquisition Corporation, at ¶ 4.

Without debating needlessly whether the right to seek <u>different</u> (not duplicate) past damages than those to which Plaintiff is entitled requires APAC's joinder under Rule 19, Plaintiff agrees to, and hereby moves the Court for, leave to join APAC at this early juncture.[13] APAC consents to the joinder that brings all parties with any right to seek past damages for infringement of the '809 patent before this Court.[14]

### D. Paul Snypp Is Not an Indispensable Party Because He Has No Residual Interest in the '809 Patent.

Defendants argue that Paul Snypp is indispensable to this action. They mistakenly suggest that Snypp retains some right to sue for past damages. The mistake is a consequence of Defendants' perfunctory inspection of public documents without probing deeper and contacting Plaintiff with their concerns or questions.

As detailed previously, Snypp acquired the '809 patent on November 3, 2003. On August 2, 2005, Snypp assigned the '809 patent to APAC.[15] The Snypp/APAC Agreement assigns to APAC:

> the entire right, title, and interest in and to the Patents, **including without limitation, all rights of Assignor to sue for past, present and future infringement of the Patents**, including the right to collect and receive any damages, royalties or settlements for such infringements ....[16]

This language demonstrates that Snypp no longer owns any rights in the '809 patent. All substantial rights in the '809 patent, including Snypp's right to collect past damages, were assigned to APAC. Since Snypp does not retain any rights in the '809 patent, he is not a necessary, much less indispensable, party. Thus, Defendants' request that the case be dismissed because Snypp has not been made a party should be denied.

---

[13] See Exh. C — Plaintiff's [Proposed] First Amended Complaint.
[14] Haynes Decl., at ¶ 4.
[15] Nelson Decl., at Exh. 2 (Agreement assigning '809 patent, as executed by Snypp on August 2, 2005).
[16] Id., at § 1.1 (emphasis added).

7

### E. The Original '809 Patent Owner, SeeColor, Is Not an Indispensable Party.

Snypp acquired the '809 patent from the original owner, SeeColor, by virtue of their

Repossession and Disposition Agreement dated October 21, 2003.[17]    Defendants did not have

access to the Agreement when they filed their motions.  An examination of the Agreement may

prompt Defendants to argue that SeeColor is indispensable to these proceedings.

But irrespective of whether an argument may be made that SeeColor retained some

interest in pre-assignment damages (despite Snypp's repossession of the '809 patent as a secured

creditor), SeeColor was administratively dissolved on October 1, 2004 by the Washington

Secretary of State.[18]  Under Washington law:

> Once the secretary gives notice that administrative dissolution is
> pending, the company has 60 days to correct the grounds for
> dissolution, and, if it fails to do so, the company is dissolved.  **If
> the company does not apply for reinstatement within two years
> of the administrative dissolution, the secretary of state 'shall'
> cancel the certificate of formation.**  Once cancelled, an LLC is
> no longer a separate legal entity.  The statute mandates that an
> administratively dissolved company wind up its affairs within two
> years.  **Failure to reinstate a dissolved corporation within the
> permitted timeframe results in a lack of standing to bring an
> action.**

See *Maple Court Seattle Condo. Ass'n v. Roosevelt*, 160 P.3d 1068, 1070 (Wash. App. 2007)

(emphasis added); *see also* Wash. Rev. Code. Ann. §§ 25.15.285(2), 25.153.290(4),

25.15.070(2)(c), 25.15.270(6) (Lexis current through July 21, 2007); *Pacesetter Real Estate, Inc.*

*v. Fasules*, 767 P.2d 961, 964 (Wash. App. 1989) (citing a long line of Washington case law

holding that a corporation cannot maintain any action once the two year reinstatement period

expires).

---

[17] Snypp Decl., at Exh. 1.
[18] Nelson Decl., at Exh. 4 (Certificate of Administrative Dissolution).

SeeColor did not institute reinstatement proceedings prior to October 1, 2006, the two-year deadline.[19] Plaintiff filed the instant lawsuit on August 7, 2007 — more than a year after SeeColor's last chance for reinstatement. Because SeeColor has no standing to bring any action for past damages attendant to the time it owned the '809 patent, SeeColor cannot possibly have any interest in the '809 patent, or in this litigation, and cannot be considered indispensable to the adjudication of Defendants' infringements.

### F. This Action Should Not Be Dismissed Under Rule 12(b)(2, 4-6) Because the Defect of Which KM Printing Complains Is a Curable Misnomer.

Defendant KM Printing complains that Plaintiff sued a Konica Minolta entity that was merged out of existence as part of a corporate reorganization a month before Plaintiff filed this lawsuit.[20] Apparently, Plaintiff should have named Konica Minolta Business Solutions U.S.A., Inc. ("KM Business"), successor in interest to KM Printing.[21] The mistake amounts to a misnomer correctable via Rule 15. Once corrected, this argued basis for dismissal is moot.

"The misnomer rule operates in cases where a plaintiff has actually sued and served the correct party but has mistakenly used the wrong name of the defendant in the original caption." *Flynn v. Best Buy Auto Sales*, 218 F.R.D. 94, 97 (E.D. Pa. 2003) (citing *Munetz v. Eaton Yale and Towne, Inc.*, 57 F.R.D. 476, 479 (E.D. Pa. 1973)). In other words, a misnomer involves a correct defendant sued under a wrong name. *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 1:04-CV-396, 2006 U.S. Dist. LEXIS 91358, at *11 n. 3 (N.D. Ind. Dec. 18, 2006).

"In deciding whether to allow a party to amend the process and/or complaint to correct an asserted misnomer of the defendant, the general test should be whether, on the basis of an

---

[19] Snypp Decl., at ¶ 4.
[20] KM Printing Motion at p. 6.
[21] See id. at p. 2 (noting that KM Business brought a declaratory judgment action "to vindicate their own rights") and p. 16 (admitting that KM Business succeeded to KM Printing).

9

objective standard, it is reasonable to conclude that the plaintiff had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether plaintiff actually meant to serve and sue a different person." *Paul v. G.P.D.A. Inc.*, No. 3:02-CV-0834-N, 2003 U.S. Dist. LEXIS 20833, at * 17-18 (N.D. Tex. Nov. 18, 2003); *see also Jackson v. Duke*, 259 F.2d 3, 6-7 (5th Cir. 1958)[22]; *Flynn*, 218 F.R.D. at 97.

KM Printing notes in its motion that certain pre-suit correspondence regarding the '809 patent was sent to KM Business.[23]  And KM Business is clearly aware that it was the intended target of the present action based on the filing of its Delaware declaratory judgment the same day KM Printing submitted its motion to dismiss here. Such is objective proof, to wit: Plaintiff had in mind to sue an appropriate Konica Minolta entity; Plaintiff made a mistake in connection with naming the proper entity; and yet Plaintiff's suit was effectively served on the intended entity (service on KM Printing was, in effect, service on KM Business as the successor in interest).

At a minimum, KM Business received notice of this action sufficient to prompt it to action.  And there is no indication that Plaintiff intended to sue an entity other than the proper Konica Minolta subsidiary.  Because the failure to name KM Business is the result of a misnomer, such failure does not warrant dismissal.  Plaintiff should be permitted leave to name KM Business as the properly named Konica Minolta party.

### G. Plaintiff Seeks Leave to Amend Its Complaint Pursuant to Rule 15 to Name KM Business.

Under Rule 15, once a responsive pleading has been served, a plaintiff must seek leave of court to amend its complaint, which "leave shall be freely given when justice so requires." Specifically, Rule 15(c)(3) was designed to:

---

[22] Noting that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

[23] See KM Printing Motion at p. 16 and attendant Tarnay Decl., at Exh. 14.

> change the result in *Schiavone v. Fortune*, supra, **with respect to
> the problem of a misnamed defendant**. An intended defendant
> who is notified of an action within the period allowed by Rule
> 4(m) for service of a summons and complaint may not under the
> revised rule defeat the action on account of a defect in the pleading
> with respect to the defendant's name, provided that the
> requirements of clauses (A) and (B) have been met. If the notice
> requirement is met within the Rule 4(m) period, **a complaint may
> be amended at any time to correct a formal defect such as a
> misnomer or misidentification**.

Fed. R. Civ. P. 15(c), Advisory Committee Notes (1991 Amendment) (emphasis added).

There is no question that the intended defendant, KM Business, received notice of this

lawsuit within the 120 day time limit for service set forth in Rule 4(m). Plaintiff here filed suit

on August 7, 2007. Less than 60 days later, on October 1, 2007, KM Business acted in concert

with the named Defendant here, KM Printing, to file a declaratory judgment action in Delaware

and move this Court to dismiss or transfer. *See Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir.

1998) (noting that the court will infer notice if there is an identity of interest between the original

defendant and the defendant sought to be added or substituted). Moreover, KM Printing and KM

Business are represented by the same counsel in the two suits, namely Thomas Tarnay of SIDLEY

AUSTIN LLP in Dallas.[24] "Notice may be imputed to the new party through shared counsel."

*Id.*[25]

---

[24] See KM Printing Motion at p. 18 and attendant Tarnay Decl., at Exh. 1 (Complaint for Declaratory
Judgment at p. 12).

[25] In *Barkins v. Int'l Inns, Inc.*, 825 F.2d 905 (5th Cir. 1987), the Fifth Circuit affirmed the district court in
allowing an amended pleading to relate back under Rule 15(c) when plaintiff sued "Holiday Inns, Inc."
for racial discrimination instead of "International Inns," a franchisee of Holiday Inn, Inc. *Id.* at 906. The
court noted that International Inns was aware of the suit through shared counsel when International Inns'
lawyer represented the plaintiff's employer at an EEOC hearing and received copies of right-to-sue
letters. *Id.* at 907. *See also Hendrix v. Mem. Hosp. of Galveston County*, 776 F.2d 1255, 1258 (5th
Cir.1985) (notice was imputed where new defendant shared mailing address and attorneys with original
defendant).

With respect to Rule 15(c)(3)(A), KM Business will not be prejudiced in maintaining a defense on the merits at this early stage of the case. Because the Defendants chose to seek dismissal or transfer, no Defendant has filed formal answers or defenses to Plaintiff's Complaint. Moreover, Plaintiff and its counsel met in person with Mr. Tarnay last month where Plaintiff delivered a presentation to Mr. Tarnay, as counsel for the Konica Minolta entities, concerning the technology of the '809 patent and its application to Konica Minolta products.[26] A purpose of the meeting was to educate Mr. Tarnay so that he would have a clear understanding of Plaintiff's infringement allegations.[27]

Through, at least, pre-suit correspondence and the in-person meeting with its counsel, KM Business acquired an understanding of the Konica Minolta printing products, or types of printing products, that Plaintiff accuses in this lawsuit. KM Business, thus, understood that Plaintiff intended to sue the Konica Minolta entity responsible for the manufacture, sale, and distribution of those products. Moreover, KM Business knew at the time of the post-Complaint meeting that Plaintiff sued a Konica Minolta entity that had recently been merged into KM Business, yet said nothing to Plaintiff of the error.[28] For these reasons, KM Business cannot deny that, but for Plaintiff's mistake concerning the identity of the proper party, its action would have been brought against KM Business. Such satisfies the requirement of Rule 15(c)(3)(B).

In essence, Plaintiff should be permitted leave to amend its original complaint to correct the misnomer occasioned by the recent Konica Minolta restructuring. And the amendment should relate back to the August 7, 2007 filing date of the original Complaint. "Rule 15(c) is 'meant to allow an amendment changing the name of a party to relate back to the original

---

[26] Nelson Decl., at ¶ 7.
[27] Id.
[28] Id.

complaint ... if the change is the result of an error, such as a misnomer or misidentification.'"
*Jacobsen*, 133 F.3d at 320.[29]

## III.    ARGUMENTS AND AUTHORITIES AGAINST TRANSFER

### A. This Eastern District Action Is the First Filed.

KM Printing and the Canon Defendants contend this action should be transferred
pursuant to the first-to-file rule.   As stated in Defendants' motions "the rule is based on
principles of comity, avoiding interference with the affairs of another court and avoiding
duplicative litigation."[30]   KM Printing contends its Delaware declaratory judgment action is the
first filed suit since it properly names all necessary parties.   Likewise, the Canon Defendants
contend that their Washington declaratory judgment action is the first filed since it names all
necessary parties.

Succumbing to Defendants' logic on this point is to suggest that this Court should ignore:
(i) that this lawsuit was actually filed first; (ii) that misnomers are curable under Rule 15 and
relate back to the original filing date; and (iii) that Rule 19 joinders — to the extent necessary —
can be accomplished in this case without jurisdictional impediment.

Defendants intentionally created duplicative litigation by filing multiple declaratory
judgments in Washington and Delaware.   Now they come before the Court and assert that their
actions are entitled to chronological priority.   In filing the declaratory judgments, Defendants
have not only sought to have other courts interfere with the affairs of this Court, but they have
sued at least two parties in error.

This action is the original and first filed action.   "The first-filed rule turns on which court
first obtains possession of the <u>subject</u> of the dispute, not the parties of the dispute." *Schering*

---

[29] Quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469 (2d Cir. 1995).
[30] KM Printing Motion at p. 16 (citing *Datamize, Inc. v. Fidelity Brokerage Svcs., LLC*, No. 2:03-CV-321
DF, slip op. at 4 (E.D. Tex. Apr. 22, 2004)); Canon Defendants Motion at p. 17-18 (citing same).

*Corp. v. Amgen Inc.*, 969 F. Supp 258, 267 (D. Del. 1997);[31] *see S&B Eng'r & Constr., Ltd. v. Alstom Power, Inc.*, No. 3:04-CV-0150-L, 2004 U.S. Dist. LEXIS 21021, at *6 (N.D. Tex. Oct. 19, 2004) (stating that "the first-to-file rule looks only to the sequence of filing events ... as the relevant metric for determining which court obtained jurisdiction first").

In *Schering*, the court "first acquired subject matter jurisdiction over the dispute in December of 1996" when Schering's original Complaint for patent infringement was filed. *Id.* As in this case, the defendant in *Schering*, Amgen, filed a subsequent declaratory judgment action in another district against two parties, Schering and Biogen. *Id.* at 260. Amgen lodged a concurrent motion to dismiss in response to Schering's suit premised upon the failure of Schering to join Biogen as an indispensable party. *Id.* Schering then amended to add Biogen as a co-plaintiff. *Id.*

Amgen argued that its choice of forum was entitled to deference as, effectively, the first forum to acquire jurisdiction over all necessary parties.[32] *Id.* at 265-267. The *Schering* court rejected this notion holding that "the Delaware action is considered first-filed, regardless of the addition of a new party" after the declaratory judgment action was filed. *Id.* at 267.

Under the first-to-file rule, the Washington and Delaware courts should cede to this action, particularly once Plaintiff's requested Complaint amendments are made. There is simply no basis for this Court to conclude that transfer to either of the alternate venues is appropriate. "In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990).

---

[31] Quoting *Advanta Corp. v. Visa U.S.A., Inc.*, No. 96-7940, 1997 U.S. Dist. LEXIS 2007, at *6-7 (E.D. Pa. Feb. 19, 1997).

[32] In *Schering*, there was a standing issue related to whether Schering, as the purported exclusive licensee, could bring suit alone without joinder of the patent owner, Biogen. This is not an issue here where Plaintiff Screentone is the patent owner with an indisputable right to bring this action.

KM Printing and the Canon Defendants cite *Mallinckrodt Med., Inc. v. Nycomed Imaging A.S.*, 49 U.S.P.Q. 2d 1474 (D. Mo. 1998), ostensibly for the proposition that a later filed action is considered to be the first-filed when the later filed action adds necessary parties. This is an improper reading of the case.

In *Mallinckrodt*, the plaintiff filed an amended complaint adding a second defendant nearly four months after the original defendant, and the added defendant, together filed a declaratory judgment action in the District of New Jersey. *Id.* at 1474. The *Mallinckrodt* court determined that it did not have personal jurisdiction over the original defendant and dismissed it from the action. *Id.* at 1476. Moreover, the *Mallinckrodt* court found that the plaintiff made a "deliberate tactical choice rather than error" in failing to name at the outset the second defendant. *Id.* at 1477. The plaintiff's amended pleading did not enjoy the normal relation back benefits under Fed. R. Civ. P. 15(c), as a consequence. *Id.*

The original defendant having been dismissed, and the amended complaint naming the second defendant not relating back to the original complaint's filing date, the court held that the plaintiff's amended complaint was not filed before the declaratory judgment action and, therefore, the court transferred the case under the first-to-file rule. *Id.* at 1477-78.

The *Mallinckrodt* court did <u>not</u> transfer the action for the reason that all of the necessary parties were named in the declaratory judgment action. Rather, the plaintiff was punished for engaging in deceptive litigation tactics, and the lack of personal jurisdiction over the "single defendant in plaintiff's original complaint" became determinative. *Id.* at 1477. As detailed above, these are not the circumstances here. The *Mallinckrodt* case is inapt, and this case should not be transferred to Delaware or Washington where second-filed actions are pending.

15

### B. Plaintiff's Forum Choice Is Paramount and Factors Weigh Against Transfer Under 28 U.S.C. §1404(a).

The Canon Defendants believe this case should be transferred to the Western District of Washington under 28 U.S.C. §1404(a). But they carry a heavy burden to demonstrate that such change in venue is warranted. "To prevail, the movant must demonstrate that the balance of convenience and justice substantially weighs in favor of transfer, and, unless the balance of conveniences weighs heavily in the favor of the defendant, the plaintiff's choice of forum will rarely be disturbed." *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 675 (E.D. Tex. 2006) (rejecting motion to transfer to New York after determining that defendant had not overcome presumption in favor of plaintiff's forum selection).

The statute permits a district court to transfer an action "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. §1404(a). The defendant must show, however, that the relevant factors "clearly favor such a change"; otherwise, the plaintiff's choice of forum prevails. *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999).

In deciding whether a case merits transfer pursuant to §1404(a), the factors to be balanced in considering the convenience of the parties are: (a) plaintiff's choice of forum; (b) the convenience of parties and witnesses; (c) the place of alleged wrong; (d) the cost of obtaining the attendance of witnesses; (e) the accessibility and location of sources of proof; and (f) the possibility of delay and prejudice if transfer is granted. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 771, 781 (E.D. Tex. 2000) (rejecting transfer motion after finding defendant "failed to demonstrate that the balance of convenience and justice *substantially* weighs in favor of transfer").

The public interest factors considered are: (a) the administrative difficulties caused by court congestion; (b) the local interest in adjudicating the local disputes; (c) the unfairness of

16

burdening citizens in an unrelated forum with jury duty; and (d) the avoidance of unnecessary problems in conflict of laws. *Id.* at 771.

To prevail, the Canon Defendants must prove that the public and private interest factors substantially favor transferring the case. They can meet this burden only by offering factual evidence to support their claim. "Defendants seeking a transfer cannot carry their burden by merely making unsupported assertions, but rather they must properly establish relevant venue facts by affidavit, deposition or otherwise." *In re Triton*, 70 F. Supp. 2d at 688-90 (rejecting defendant's assertions that the venue was inconvenient to witnesses, where such assertions were not supported with facts). In other words, the Canon Defendants cannot rely on bare allegations to substantiate their transfer request.

It bears mention that when this Court transfers a case under §1404(a), the circumstances are typically a considerable departure from those present here. In *Zoltar*, for instance, the decision to transfer the case to the Northern District of California turned on the following: (1) three of the four patents-in-suit were "still being litigated in the Northern District of California;" and (2) the California judge had invested substantial time and effort with the patents, including receiving tutorials on the technology, conducting three claim construction hearings, issuing three claim construction orders, considering motions for summary judgment and motions in limine, conducting a three-week jury trial, and more. *Zoltar Satellite Sys., Inc. v. LG Elec. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 735-37 (E.D. Tex. 2005) (emphasis added). It is this type of prior court involvement that occasions transfer from this District. No such prior court involvement is at issue concerning the '809 patent.

17

**Private Convenience Factors:**

    1.   **Plaintiff's Choice of Forum Is Entitled Substantial Deference.**

Plaintiffs have a "well-established" and "highly esteemed" right to choose a forum. *Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 571 (E.D. Tex. 2004); *In re Triton*, 70 F. Supp. 2d at 688; *Disc Link Corp. v. Oracle Corp.*, No: 5:07CV58, Oct. 10, 2007 Order Denying Motion to Transfer (rejecting defendants' motion to transfer, among other reasons, "due to the great respect ordinarily afforded a plaintiff's choice of forum").[33]

As this Court noted recently in *Paltalk Holdings Inc. v. Microsoft Corp.*:

> [T]he judicial system inherently provides a plaintiff with his choice of forum:
>
> 'The existence of [forum choices] not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he consider most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.'

*Paltalk Holdings*, No. 2:06-CV-367-DF, February 5, 2007 Order Denying Motion to Transfer, at p. 4 (quoting *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983)).[34]

Notably, "the patent venue statute is much more expansive than the general venue statute and gives a plaintiff broader discretion in where the plaintiff chooses to bring the suit." *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 799 (E.D. Tex. 2006) (citations omitted). The plaintiff's choice of forum is "a paramount consideration in any determination of a transfer request," and "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Young v. Armstrong World*

---

[33] Exh. E (copy of Order).
[34] Exh. F (copy of Order).

*Indus., Inc.*, 601 F. Supp. 399, 401 (N.D. Tex. 1984) (citation omitted); *Z-Tel Commc'ns*, 331 F. Supp. 2d at 572 (citations omitted); *Disc Link*, Order at p. 5 ("plaintiff's choice of forum 'should not be lightly disturbed'")(citations omitted).

The Canon Defendants argue that Plaintiff's choice of forum deserves no deference because "none of the operative facts occurred within the forum selected by Plaintiff."[35] They disregard Plaintiff's allegations that Defendants engage in infringing activity in this Division, and this District generally. Defendants do not deny in their Motion that they sell accused products in this Division or otherwise attempt to prove they do not. The Canon Defendants have worldwide presences, and they distribute their infringing products in this Division and elsewhere. *See Nokia Corp. v. Buca, Inc.*, No. 3-01-CV-2613-R, 2002 U.S. Dist. LEXIS 12028, at *5 (N.D. Tex. July 2, 2002) (giving weight to fact defendant's products were offered for sale in Texas in rejecting defendant's motion to transfer).

The Canon Defendants attempt also to make the point that the typical deference afforded a plaintiff's forum choice is diminished when none of the parties reside in the Eastern District. But in *FCI USA, Inc. v. Tyco Elecs. Corp.*, for instance, the plaintiff's choice of forum was "given significant consideration" in the decision to deny transfer, despite the fact that both the plaintiff and defendant resided in the Middle District of Pennsylvania. No. 2-06-CV-4, 2006 U.S. Dist. LEXIS 50466, at *5 (E.D. Tex. July 24, 2006); *see also Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed.") (citations and internal quotations omitted). This same "significant consideration" is warranted here, including additional consideration for the facts that: (i) unlike in *FCI*, Plaintiff is not a resident of the ostensible transfer district; and (ii)

---

[35] Canon Defendants' Motion at p. 20.

Plaintiff's parent, APAC, maintains a constant presence in this Eastern District of Texas, having an office located in Frisco where it conducts a substantial amount of business.[36]

Generally, the cases cited by the Canon Defendants in support of their arguments on the forum selection point have minimal value. Cases such as *TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407 (E.D. Tex. 1998), *Langton v. Cbeyond Communication*, L.L.C., 282 F. Supp. 2d 504 (E.D. Tex. 2003), *Shoemaker v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828 (E.D. Tex 2002), and *Mortensen v. Maxwell House Coffee Co.*, 879 F. Supp. 54 (E.D. Tex. 1995) are not patent cases. Rather, all but one are cases based on diversity jurisdiction and involve state law claims.

*N. Telecom Ltd. v. Samsung Elec., Co.*, No. 3:94-CV-1115-D, 1995 U.S. Dist. LEXIS 21891 (N.D. Tex Jan. 17, 1995) and *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473 (D.N.J. 1993) each involve foreign corporations, Canadian and Japanese, respectively. The "presumption that Plaintiff chooses a convenient forum dissipates when plaintiff is a foreign corporation." *N. Telecom*, 1995 U.S. Dist. LEXIS 21891, at *7 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). This is not the case here.

And in *Rock Bit Int'l v. Smith Int'l*, 957 F. Supp. 843 (E.D. Tex. 1997), the plaintiff resisted transfer on the "sole" basis that the case was expected to move faster in this District than in the Southern District of Texas. *Id.* at 843-44. In *John Hanby & Hanby Envtl. Lab. Procedures v. Shell Oil Co.*, 144 F. Supp. 2d 673, 678 (E.D. Tex. 2001), the defendant showed that it made no sales of the infringing product in this District, and the plaintiffs "did not refute that contention." *Id.* at 675. Here, the Canon Defendants make no such showing; instead admitting sales of accused products in this District.[37]

---

[36] Exh. D (Haynes Decl., at ¶ 2). Note that Defendants assert in their Motions that APAC is an indispensable party. Note also that Plaintiff seeks leave to add APAC as a party plaintiff to this action.
[37] Canon Defendants Motion at p. 21.

In essence, it is well-established that heavy deference should be accorded Plaintiff's forum choice, there exists a causal nexus to this District, and citizens in this district "have a significant interest in making sure federal patent laws are enforced." *Good Sportsman Mktg. LLC v. Testa Assoc., LLC*, No. 6:05CV90, 2005 U.S. Dist. LEXIS 29182, at *17 (E.D. Tex. Sept. 1, 2005). This factor strongly weighs against transfer.

### 2. Relative Ease of Access to Sources of Proof.

The Canon Defendants argue that there are "no significant documents, witnesses[38] or other evidence located within the proximity of this District."[39] But the location of documents rarely provides a basis for transfer because most documents are "easily transportable in paper or electronic form." *AdvanceMe*, 450 F. Supp. 2d at 675; *see also Network-1 Sec. Solutions*, 433 F. Supp. 2d at 799 (denying motion to transfer based on location of documents, where documents were to be exchanged electronically).

The Court observed in *Good Sportsman*, "[P]atent cases typically involve battles of documents and technical experts scattered across the nation." 2005 U.S. Dist. LEXIS 29182, at *15. And this Court held specifically that "the accessibility and location of sources of proof should weigh only slightly in this Court's transfer analysis, particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage." *Mohamed*, 90 F. Supp. 2d at 778; *see Brock v. Baskin-Robbins USA Co.*, 113 F. Supp. 2d 1078, 1089 (E.D. Tex. 2000) ("when documents can be easily copied and shipped to the Eastern District, the Court does not consider their present location 'an important factor in the transfer analysis'") (quoting *In re Triton*, 70 F. Supp. 2d at 690). This factor is neutral at best and does not support transfer.

---

[38] See discussion germane to witnesses below at section III.B.3.
[39] Canon Defendants Motion at p. 22.

### 3.    Witness Convenience, Cost of Attendance, and Availability of Compulsory Process.

The Canon Defendants fail to demonstrate that the location of potential witnesses supports transferring this case. They do not identify any witness who would be unable or unwilling to attend a trial in this District or whose testimony cannot be obtained by videotaped deposition.

They contend that because Defendants raise chain of title issues concerning the '809 patent, relevant witnesses may be found in Washington where the patent was prosecuted and where certain assignment agreements were executed. As demonstrated above, however, Plaintiff owns the '809 patent. All of the relevant documents establishing such ownership are now before the Court, and they render the Defendants' title-based arguments moot.

Beyond the question of title, the Canon Defendants point out that this Court cannot compel the testimony of third parties such as the '809 patent inventor, former patent owner Snypp, and the prosecuting patent attorney.[40] The mere identification of such potential witnesses does not meet the Canon Defendants' burden to "clearly specify the key witnesses to be called and make a general statement of what their testimony will cover." *Z-Tel Commc'ns*, 331 F. Supp. 2d at 574.

Moreover, both the inventor and Snypp have agreed to testify at trial if needed and have each stated unequivocally that attending trial in this District would present no inconvenience.[41] *See Computer Acceleration Corp. v. Microsoft Corp.*, No. 9:06-CV-140, September 18, 2006 Order Denying Defendant's Motion to Transfer Venue, at p. 4 (where inventors and patent prosecutor "submitted declarations disclaiming any inconvenience and agreeing to appear

---

[40] Canon Defendants Motion at p. 23.
[41] Exh. G — Declaration of Craig Surbrook, at ¶¶ 5-7; Snypp Decl., at ¶¶ 6, 9-10.

voluntarily" in this District, their locations did not weigh in favor of transfer).[42] This weighs against transfer.

The Canon Defendants mention also that "company representatives" would be less burdened by trial in Washington. Presumably, they refer to representatives or employees of Defendants. But it is "the convenience of the non-party witnesses rather than employee witnesses that is the more important factor and is accorded greater weight." *Cummins-Allison Corp. v. Glory Ltd.*, No. 2-03-CV-358, 2004 U.S. Dist. LEXIS 13839, at *17 (E.D. Tex. May 26, 2004) (citing *In re Triton*, 70 F. Supp. 2d at 690).

And the Canon Defendants have not demonstrated that any witness purportedly burdened by proceedings in this District will actually need to travel to Texas to testify, would be unwilling to do so if asked, or would not appear by videotaped deposition. In denying the motion to transfer in *Symbol Technologies*, the Court noted that the parties could use videotaped testimony if a witness could not be compelled to appear at trial. *Symbol Tech., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 679 (E.D. Tex. 2006); *see also Computer Acceleration*, Order at p. 6 (rejecting witness location as basis for transfer since videotaped testimony can replace live testimony, especially for witnesses "whose credibility cannot seriously be challenged").

Lastly, not a single Defendant has a principle office west of this District — let alone in Washington.[43] Certainly, this Division is more conveniently centrally located relative to the array of parties than Washington's Western District.

---

[42] Exh. H (copy of *Computer Acceleration* Order).
[43] Nelson Decl., at Exh. 5.

### 4.    The Place of the Alleged Wrong.

The Canon Defendants do not argue that their infringements occur only in the Western District of Washington or that the Washington venue is more relevant to the Canon Defendants' infringing conduct. The Canon Defendants' accused products are sold in this District, making it an appropriate forum to litigate this action, and residents of this District have an interest in resolving the infringement claims brought here. *See Good Sportsman*, 2005 U.S. Dist. LEXIS 29182, at *17 (citizens in this district "have a significant interest in making sure federal patent laws are enforced"); *Cummins-Allison*, 2004 U.S. Dist. LEXIS 13839, at *17 (noting that "[g]enerally, the preferred forum in a patent infringement action is 'that which is **the center of accused activity**.' If there is **no center of infringement activity** in a particular case, as here, then, as long as the plaintiff brings its action in a forum where the alleged infringement is occurring, that choice should not be undermined ....") (internal citation omitted) (emphasis added). This factor weighs against transfer.

### 5.    Other Factors Relevant in Conducting an Expeditious and Inexpensive Trial.

No significant efficiencies will be realized by transferring this case to the Western District of Washington. The Western District of Washington has no particular familiarity with the '809 patent. And as noted below, there are no telling administrative advantages attendant to transfer based on judicial case load statistics.

In *Maurice Mitchell*, however, the Court noted that "the Eastern District of Texas is often able to bring patent cases to trial within eighteen months of filing." *Maurice Mitchell*, Order at

p. 5.[44] This speed, and the fact that this Court is quite experienced in patent matters, are reasons Plaintiff chose to litigate here.[45] This weighs against transfer.

Further weighing against transfer is the fact that Plaintiff has undertaken extensive work to comply with this Court's P.R. 3-1, namely the preparation of its infringement disclosures involving multiple parties, each with multiple accused products. Given that the disclosures are due ten days after the Case Management Conference, such early effort is necessary.

**Public Interest Factors:**

>    6.    **Administrative Issues.**

There do not appear to be any administrative advantages to transferring this action to the Western District of Washington. In fact, judicial case load statistics show that the time to trial is typically shorter in this District as compared to the Western District of Washington.[46] At best, this factor is neutral and, thus, does not favor transfer.

>    7.    **Burdens of Jury Duty and Local Interest in Adjudicating Local Disputes Favors Retaining Case.**

Plaintiff alleges infringing activity by Defendants through their sale of infringing products throughout the United States, including the Eastern District of Texas. Defendants do not deny in their Motions the fact that they sell accused products in this District, or otherwise attempt to prove they do not.

Residents of the Eastern District of Texas "have a significant interest in the enforcement of federal patent laws against infringement activities." *Cummins-Allison*, 2004 U.S. Dist. LEXIS 13839, at *20-21 (denying motion to transfer); *See Disc link*, Order at p. 11.[47] Indeed, "[t]his

---

[44] Exh. I (copy of Order).
[45] Haynes Decl., at ¶ 3.
[46] Nelson Decl. , Exh. 6 (U.S. District Court Judicial Caseload Statistics for the 12-month period ended September 30, 2006.
[47] Exh. E (copy of Order).

interest is at least as significant" as that of residents of other districts; thus, this factor "do[es] not weigh in favor of transfer." *Id.*

And because acts of infringement have occurred in this District and residents of this District have a strong interest in the enforcement of patent laws, this is not an "unrelated" forum that would burden the citizens of this District unnecessarily. In fact, the Canon Defendants have not shown that there exists any greater burden on a potential Eastern District of Texas jury, or any lesser burden on a jury in Washington.

###    8.    The Courts' Familiarity with Controlling Law and Conflicts of Law are Non-Factors.

As this Court pointed out in *PalTalk Holdings*, "This Court is equally equipped to apply federal law as is a court in the Northern District. Because federal law applies, no conflict of law exists." *PalTalk Holdings*, Order at p. 9.

The Canon Defendants contend that issues germane to the '809 patents' chain of title may depend on Washington law. They contend also that the execution of certain assignment documents, a ministerial task, in Washington justifies transfer. As demonstrated earlier, Plaintiff owns the '809 patent and can show a complete and unbroken chain of title. Defendants' concerns stem from not possessing all of the relevant ownership documents before filing their Motions. Relevant documents establishing title are attached to this Opposition and diffuse any title-based arguments. Further, federal courts are often called upon to apply the law of the various States, especially in diversity cases. To the extent that another state's law is applicable to any ancillary matter, this Court is well qualified to apply those laws.

## IV.    CONCLUSION

Plaintiff has shown that it has valid legal title to the '809 patent, that it has standing to bring this action, and that the suit should not be dismissed on any basis. Plaintiff seeks leave to amend its Complaint to correct a technical misnomer and to add Plaintiff's parent, Acacia Patent Acquisition Corporation, as a party plaintiff. Such amendments at this early juncture are proper under Rule 15 and Rule 19, respectively, and should be allowed. Defendants' assertion that Paul Snypp is an indispensable party is incorrect as he retains no ownership interest in the '809 patent.

The Defendants' argument that their various declaratory judgment actions are first-filed because they are the first actions to name, in their estimation, all necessary parties is misplaced. The first-to-file rule turns on which court first obtains possession of the subject of the dispute. That is the Court here, and transfer is inappropriate.

Lastly, the Canon Defendants have failed to overcome the heavy deference given to Plaintiff's choice of forum. They have not demonstrated that the conveniences of the parties or the public interest are significant enough to warrant a change. For these reasons, the requested transfer under §1404(a) should be denied as well.

**Dated:  October 16, 2007**                          Respectfully submitted,

                                                     /s/ Edward R. Nelson III
                                                     State Bar No. 00797142
                                                     Jonathan T. Suder
                                                     State Bar No. 19463350
                                                     Edward E. Casto, Jr.
                                                     State Bar No. 24044178
                                                     FRIEDMAN, SUDER & COOKE
                                                     Tindall Square Warehouse No. 1
                                                     604 East 4th Street, Suite 200
                                                     Fort Worth, Texas 76102
                                                     (817) 334-0400
                                                     Fax (817) 334-0401
                                                     nelson@fsclaw.com

jts@fsclaw.com
casto@fsclaw.com

T. John Ward, Jr.
State Bar No. 00794809
LAW OFFICE OF T. JOHN WARD, JR., P.C.
111 W. Tyler Street
Longview, Texas  75601
(903) 757-6400
(903) 757-2323 (fax)
 jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of October, 2007, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Edward R. Nelson, III

# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SCREENTONE SYSTEMS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> CANON U.S.A., INC., EASTMAN KODAK COMPANY, PANASONIC CORPORATION OF NORTH AMERICA, RICOH AMERICAS CORPORATION, KONICA MINOLTA PRINTING SOLUTIONS U.S.A., INC., KYOCERA MITA AMERICA, INC., and HEIDELBERG USA, INC., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 2:07cv340-DF <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S SURREPLY IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS OR TRANSFER**

Defendants attack Plaintiff's ownership of the '809 patent, asserting that the 2003 Repossession and Disposition Agreement (the "Repossession Agreement") signed by SeeColor did not effectively transfer ownership of the patent to Paul Snypp. Defendants' entire analysis on this point is mislaid for the reasons that: (i) the Repossession Agreement is a valid and binding act of the SeeColor Board of Directors; (ii) any alleged lack of compliance with § 23B.08.720 of the Washington Business Corporation Act makes the Repossession Agreement voidable, not void; (iii) if at all voidable, Defendants have no standing to make such an assertion; and (iv) the Repossession Agreement makes a present and immediate transfer of ownership of the '809 patent — it does not, as argued, merely create an obligation to make the transfer.

Having properly acquired ownership of the '809 patent as of June 18, 2007, Plaintiff maintained standing to bring this suit when filed on August 7, 2007. Irrespective of whether former '809 patent owners are necessary to a "complete" adjudication, their presence as parties to this suit at the time the original Complaint was filed makes no difference to the first-to-file analysis. The first-to-file rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute.

Nothing written in Defendants' Reply briefs alters this Court's § 1404(a) transfer analysis. And, as explained below, KM Printing improperly narrows the application of Rule 15(c) in an effort to reap a dismissal.

## I.    The Repossession Agreement Was a Valid and Binding Act of SeeColor Corporation.

In 2003, the SeeColor Board of Directors executed the Repossession Agreement in favor of Snypp. Defendants assert that Plaintiff has not proved that the SeeColor Board had authority to enter into the Repossession Agreement, suggesting that "the action was not effective because [the transaction] did not receive an affirmative vote from a majority of the qualified directors."

1

Defendants rely upon the Washington Business Corporation Act, specifically RCW 23B.08.720.[1]

Section 23B.08.720 suggests a protocol to be followed by a company board when voting on a company transaction involving an interested director — a so-called "conflicting interest transaction." *See* WASH. REV. CODE § 23B.08.720 (2002) and § 23B.08.710(2)(a) (2002).[2] The benefit of following the suggested protocol is that the transaction "may not be enjoined, set aside, or give rise to an award of damages or other sanctions, in a proceeding by a shareholder or by or in the right of the corporation ...." WASH. REV. CODE § 23B.08.710(2)(a).

The relevant statutes do not dictate — as Defendants intimate — a voting methodology that, if not followed, voids the action taken. Instead, the action is simply prone to subsequent attack by shareholders. Such an attack has not been made; SeeColor no longer exists; and Defendants are not shareholders and cannot avail themselves of the cited statutes.

More importantly, Defendants' suggestion that the SeeColor Board lacked the authority to move on the transaction is wrong. The SeeColor Bylaws state specifically:

> At each meeting of the board at which a quorum is present, the act of a majority of the directors present at the meeting shall be the act of the board of directors. The directors present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough directors to leave less than a quorum.[3]

As acknowledged in the relevant minutes, the board meeting convened with a quorum (3 of 5 directors).[4] With Snypp's participation, the directors present voted unanimously to execute the Repossession Agreement. Even if Snypp's interest in the transaction required his withdrawal from the meeting once the issue of the Repossession Agreement was put to a vote, the Bylaws

---

[1] As a threshold matter, Defendants' position presupposes that express Board approval is required before the Board Chairman and the company President (both signatories to the Repossession Agreement) could bind SeeColor contractually.

[2] See Second Declaration of Edward R. Nelson, III ("Nelson 2nd Decl."), Exh. 1 (statutes).

[3] See Second Declaration of Paul Snypp ("Snypp 2nd Decl."), Exh. 1 at Section 9(b) (copy of Bylaws).

[4] Snypp 2nd Decl., Exh. 2 (copy of Board Minutes).

2

empowered the remaining directors to approve the Repossession Agreement, which they did.[5]

## II.     The Repossession Agreement Effected a Present and Immediate Transfer.

Defendants argue that the Repossession Agreement did not transfer ownership of the '809 patent to Snypp because, when executed, it merely obligated SeeColor to execute additional papers to effect the transfer.  To support this position, Defendants isolate improperly a single Repossession Agreement provision, to wit:

> All transfers/assignments shall be endorsed by Debtor upon execution of this agreement.

Defendants then cite *IpVenture, Inc. v. Prostar Computer, Inc.* for the proposition that "an agreement to assign does not convey an interest in the patent; transfer of the interest must be implemented by written assignment." No. 2006-1012, 2007 U.S. App. LEXIS 22893 (Fed. Cir. Sept. 28, 2007).  The folly here is that *IpVenture* involved an employment contract which required the employee to assign <u>future</u> inventions to his employer.  *Id.* at *4-5.  Hence, at the time the employee executed the contract, there was no invention to convey.  This stands in stark contrast to the circumstances here, where the Repossession Agreement conveyed existing inventions and patent rights.

Moreover, Defendants' construction of the aforementioned provision is but one plausible reading.  The phrase may also mean that the various "transfers/assignments" of the "secured collateral" were consummated by SeeColor's signature to the contract. In other words, the act of

---

[5] Worth mention is the fact that, under Washington law, a "conflicting interest transaction" is immune from challenge when it is "established to have been fair to the corporation." WASH. REV. CODE § 23B.08.710(2)(c). In this case, the SeeColor Board Meeting Minutes relevant to the Repossession Agreement reflect that SeeColor's independent counsel analyzed and approved the deal: "Davis, Wright, Tremain (SeeColor's attorneys) have told us that Snypp's UCC filing is valid and that the claims (in their view) are consistent with his signed Agreement with SeeColor Corporation." And the Repossession Agreement itself makes clear that: (i) the debt owed by SeeColor to Snypp stood at $1,074,922.19; and (ii) Snypp agreed to accept SeeColor "Collateral" in complete satisfaction of the debt, despite the fact that "the Collateral is valued significantly less than the acceptance value." The Repossession Agreement states also that "[t]he Board determined that it was in the best interest of the SeeColor Corporation to surrender the assets to [Snypp] and avoid further cost and loss."

SeeColor's signature implemented the transfers/assignments it was obligated to make. It is this

meaning that the Repossession Agreement supports when accounting for other operative

provisions in the document.

> Under Washington law:

>> [C]ourts are in nearly universal agreement in construing written
>> contracts that the primary purpose of a judicial interpretation is to
>> ascertain the parties' intentions, give effect to them and make the
>> parties' intentions controlling. The intentions of the parties should
>> be ascertained from the entire writings, and, if at all possible, **all
>> parts of the writings shall be construed so as to harmonize with
>> one another**.

*Grant County Constructors v. E.V. Lane Corp.*, 459 P.2d 947, 953 (Wash. 1969) (internal

citations omitted). To harmonize all relevant parts of the Repossession Agreement is to find that

Snypp owned the '809 patent from the moment SeeColor signed the contract.

### A. The Recital Section of the Repossession Agreement Established the Parties' Intent, Which Must Be Given Effect.

The Recitals section of the Repossession Agreement makes clear that its purpose was to

fully and forever discharge the SeeColor indebtedness to Snypp by consenting to Snypp's

foreclosure on SeeColor assets pursuant to his perfected security interest:

>> Creditor has proposed to Debtor that Creditor retain the Collateral
>> in satisfaction of the debt owing to Creditor. Debtor desires to
>> consent to such retention of Collateral.... [I]t is the **intention** of
>> **Debtor and Creditor that the acceptance of the secured
>> collateral fully satisfies any debts and obligations otherwise
>> owing....**[6]

The "Collateral" included "equipment, supplies, tangible and intangible products, ... chattels,

**patents**, trade secrets and accounts."[7]

The parties' intent being to immediately liquidate an entire debt, execution of the

---

[6] Repossession Agreement at p. 1 (emphasis added).
[7] Id.

4

Repossession Agreement can only be deemed to have made an immediate and present transfer of the collateral given. Holding otherwise would abrogate the parties' intent and be inconsistent with the parties' post-agreement conduct, whereby no one but Snypp sought to exercise rights as the '809 patent owner.[8]

### B. Section 2 of the Repossession Agreement Must Be Interpreted in Light of — and Harmonized with — Other Agreement Provisions.

Defendants cherry picked one section of the Repossession Agreement to sustain an argument that Snypp never took ownership of the '809 patent. The reason for this is evident: When the language upon which Defendants rely is considered in proper context, a different result obtains. For instance, Section 4 of the Repossession Agreement states:

> Creditor **accepts** the Collateral in full satisfaction of Debtor's debt, pursuant to RCW 63A.9A.620 [Washington's strict foreclosure statute]...
>
> a. [and Debtor] **Transfers** to Creditor **all of the Debtor's right** in and to the Collateral.[9]

This provision undeniably demonstrates a present and effective transfer of the Collateral, including the '809 patent. Defendants leave Section 4 completely <u>unaddressed</u> in their briefs, focusing instead on Section 7 which, like Section 4, contains present transfer language such as: (i) "Debtor hereby transfers legal title to Creditor..."; and (ii) "Creditor has acquired the rights of the Debtors in the collateral."[10]

Defendants make a strained argument regarding Section 7 in an effort to persuade the Court to disregard its present transfer language. They say Section 7 "provides a mechanism to assist the transferee in obtaining amendment of official records regarding title to collateral." While true that that the Section 7 "transfer statement" assists a transferee in having <u>recorded</u> title

---

[8] See Snypp 2nd Decl., ¶ 6 and Exh. 3 (maintenance fees documentation).
[9] Repossession Agreement at p. 2 (emphasis and bracketed language added for clarification).
[10] Id. at p. 2.

5

to collateral changed,[11] nothing limits the effect of the language. In fact it follows that an actual change in ownership precedes any recorded change.

Lastly, the final section (Section 8), entitled "Possession", provides that the "Creditor is entitled to **immediate possession** of the Collateral."[12] This language is also consistent with a present transfer in ownership of the collateral without resort to further action (other than the execution of the Repossession Agreement itself).

### C. Use of the Washington Strict Foreclosure Statute Demonstrates the Parties Did Not Contemplate Any Further Action Beyond the Repossession Agreement.

The Repossession Agreement specifically provides that Snypp took the SeeColor collateral pursuant to the Washington strict foreclosure statute.[13] Official Comment 2 to this statute states:

> This section and the two sections following deal with strict foreclosure, a procedure by which the secured party acquires the debtor's interest in the collateral **without the need for a sale or other disposition** ....

WASH. REV. CODE § 62A.9A-620, cmt. 2 (emphasis added).[14] Further, Official Comment 3 explains that, under the strict foreclosure statute, "an acceptance of collateral" by the creditor occurs when the debtor consents "by agreeing to the acceptance in writing after default." And Official comment 7 provides that intangible property, such as patents, are properly the subject of strict foreclosure:

> This section eliminates the requirement in former section 9-505 that the secured party be "in possession" of collateral. It clarifies that intangible collateral, which cannot be possessed, may be subject to a strict foreclosure under this section.

---

[11] See Nelson 2nd Decl., Exh. 1 (WASH. REV. CODE § 62A.9A-619 (2002)).

[12] Repossession Agreement at p. 3 (emphasis added).

[13] Id. at p. 1; see Nelson 2nd Decl., Exh. 1 (WASH. REV. CODE § 62A.9A-620 (2002)).

[14] See Nelson 2nd Decl., Exh. 1 (official comments to WASH. REV. CODE § 62A.9A-620 (2007)). Note that the 2002 version of this statute in effect at the time of the execution of the Repossession Agreement is identical to the current version to which the official comments are attached.

By invoking the Washington strict foreclosure statute, it is apparent that SeeColor conveyed all rights in the Collateral, including the '809 patent, to Snypp without taking any further action, such as executing a pro forma assignment document.    The Repossession Agreement is the assignment mechanism, transferring ownership when signed.

### D.  Federal Law Does Not Affect Relevant Washington Statutes.

Defendant KM Printing argues that any Washington statute affecting transfer of patent rights is preempted by 35 U.S.C. § 261.  But § 261 merely states that "patents, or any interest therein, shall be assignable in law by an instrument in writing."  The Repossession Agreement is such a writing.  Section 261 provides further that "[a] certificate of acknowledgement under the hand and official seal of a person authorized to administer oaths within the United States ... shall be prima facie evidence of the execution of an assignment, grant or conveyance of a patent ....  *Id.*  The SeeColor signatures to the Repossession Agreement are notarized.[15]

### III.    The Snypp/APAC Agreement Confers All Rights in the '809 Patent to APAC.

Snypp sold, assigned, and transferred his complete ownership in the '809 patent to APAC by Agreement effective August 25, 2005.[16]  Specifically, Section 1 of the Agreement — entitled, ASSIGNMENT — achieves the complete transfer of '809 patent to APAC "[e]ffective upon the date hereof," including "the right to sue for past, present and future infringement" and "to collect and receive any damages, royalties, or settlements...."

Section 1 contemplates the execution of a pro forma assignment document (for attachment to the Agreement as Exhibit B).  Such an assignment document typically serves the purpose of record notice of the ownership change when filed with the USPTO.  The assignment document omits language concerning the right to seek past damages.    But the principal

---

[15] Repossession Agreement at p. 4.
[16] See Plaintiff's Opposition brief at p.7; see also Nelson Decl. thereto, at Exh. 2.

Agreement contains the requisite stipulation.

The Defendants make an issue of the fact that Snypp signed the Agreement on August 2, 2005, signed the pro forma assignment document on August 3, 2005, then granted a non-exclusive license to Newscolor, LLC (a company that he co-owns) on August 22, 2005. But the Agreement with APAC was not formally consummated until August 25, 2005.

In any event, should this Court determine that the Agreement was insufficient to confer complete ownership of the '809 patent to APAC, including the right to seek damages for infringement predating the Agreement with Snypp; then Plaintiff moves the Court, alternatively, for leave to amend its Complaint to add Snypp as a party plaintiff. As with the requested leave to add APAC as a party plaintiff, Snypp agrees to the joinder.[17]

## IV.    Defendants Have Not Identified any New Ground to Justify Transfer.

In their Replies, Defendants renew their calls to transfer this action. But they offer no new reason for doing so. For instance, they reiterate, wrongly, that the first suit that names all of the proper parties should be given priority under the first-to-file rule. Nothing they write in their Replies alters the fact that the Court first acquiring the subject of the dispute controls the suit's disposition.[18] Whether the joinder of APAC and, perhaps, Snypp as plaintiffs relates back to this lawsuit's original filing date makes no difference. Plaintiff owned the '809 patent when it filed suit and maintained the right to seek infringement damages from the date of its acquisition.

## V.    KM Printing's Misnomer Analysis Is Too Restrictive.

KM Printing argues in its Reply that Plaintiff should not be allowed to substitute the correct party under the auspices of Rule 15 because Plaintiff "deliberately and purposefully identified and sued KM Printing." To side with KM Printing, however, is to elevate form over

---

[17] Snypp 2nd Decl. at ¶ 3.
[18] See Plaintiff's Opposition brief at pp. 13-15.

8

substance.

A Southern District of Texas case with similar facts is instructive. In *Infotronics Corp. v. Varian Assoc. Corp.*, 45 F.R.D. 91, 93-94 (S.D. Tex. 1968), the court granted plaintiff's request to change the name of the defendant in a patent infringement suit to the company into which the defendant was merged just prior to the institution of suit:

> Plaintiff's claim has not been altered; plaintiff seeks merely to change the name of the defendant. The [parent corporation] received the same notice of the claim that it would have received had it been properly named. Finally, having expressly assumed all obligations of [the subsidiary], [the parent corporation] can hardly argue that it was unaware that the party sought to be sued was itself. On these facts, the court finds that since [the parent corporation] has suffered no prejudice from the misnomer in the complaint, plaintiff's leave to amend must be granted.

*Id.* at 93-94 (emphasis added). The court noted that additional "circumstances bolster this conclusion." *Id.* at 94, n.6. For instance, prior to the subsidiary's answer date, the parent corporation filed a declaratory judgment action in a different jurisdiction seeking invalidity of the same patents. *Id.*[19] Moreover, the parent corporation did not deny that the "same persons who had been operating in the name of [the subsidiary] are performing the same functions at the same location in the name of [the parent]." *Id.*

The same conclusion is warranted here where, among other things: (i) Plaintiff's claim has not been altered; (ii) KM Business received the same notice of Plaintiff's claim that it would have had it been properly named; (iii) KM Printing admits that KM Business is the "successor in interest to KM Printing"[20] and has not alleged any operational changes;  (iv) KM Business filed a declaratory judgment action seeking to invalidate the '809 patent, which suit was occasioned

---

[19] Besides granting leave to amend the complaint, the *Infotronics Corp.* court denied the defendant's motion to transfer the case to the court where the declaratory judgment action was filed. *Id.* at 94.

[20] Presumably, this includes KM Business's assumption of KM Printing's liability for infringements committed prior to the date of merger.

by Plaintiff's suit here; and (v) KM Business has suffered no prejudice, nor has any prejudice been alleged.

And recall that counsel for KM Printing and KM Business met with Plaintiff's counsel to discuss the case after Plaintiff instituted suit but prior to KM Printing's motion to dismiss.[21] The KM entities remained silent as to the misnomer to avoid Plaintiff taking corrective action before KM Business could file its declaratory judgment action. Such tactics should not be rewarded. *See Coelho v. Seaboard Shipping Corp.*, 535 F. Supp. 629, 637 (D. Puerto Rico 1982) (court allowed the amendment when the defendant "chose to remain silent and take advantage of plaintiff's mistake" despite sufficient notice to the proper party and despite the opportunity to apprise the plaintiff of the error).

Lastly, KM Printing improperly assumes that the only time a court may permit amendment of a pleading based on a misnomer is when the misnomer is deemed a "clerical or typographical" error. Rule 15 is not that narrow. "Rule 15(c) was amended for the purpose of preventing unjust results when a plaintiff, confronted with a maze of closely related corporate or governmental entities, initially chooses the wrong one to sue, unless prejudice [to the added defendant] exists." *Findley v. City of Baton Rouge*, 570 So. 2d 1168, 1171-72 (La. 1990) (discussing purpose of federal rule).

## VI.    Conclusion.

For the reasons set forth in Plaintiff's Opposition brief, and for the reasons discussed above, the proper disposition of the parties' various motions is to: (i) permit Plaintiff to amend its Complaint to add APAC and, if necessary, Snypp; (ii) permit Plaintiff to amend its Complaint to name Konica Minolta Business Solutions U.S.A., Inc.; and (iii) deny Defendants' motions to dismiss or transfer on all grounds.

---

[21] See Plaintiff's Opposition brief at p. 12.

Dated:   **October 30, 2007**

Respectfully submitted,

/s/ Edward R. Nelson III
State Bar No. 00797142
Jonathan T. Suder
State Bar No. 19463350
Edward E. Casto, Jr.
State Bar No. 24044178
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400
Fax (817) 334-0401
nelson@fsclaw.com
jts@fsclaw.com
casto@fsclaw.com

T. John Ward, Jr.
State Bar No. 00794809
LAW OFFICE OF T. JOHN WARD, JR., P.C.
111 W. Tyler Street
Longview, Texas 75601
(903) 757-6400
(903) 757-2323 (fax)
jw@jwfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2007, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Edward R. Nelson, III

# EXHIBIT 11

Westlaw.

West's RCWA **62A.9A-619**

**C** West's Revised Code of Washington Annotated Currentness
　Title 62A. Uniform Commercial Code (Refs & Annos)
　　 Article 9A. Secured Transactions; Sale of Accounts, Contract Rights and Chattel Paper (Refs & Annos)
　　　 Part 6. Default

　　　　→ **62A.9A-619**. Transfer of record or legal title

 (a) **"Transfer statement."** In this section, "transfer statement" means a record authenticated by a secured party stating:

(1) That the debtor has defaulted in connection with an obligation secured by specified collateral;

(2) That the secured party has exercised its post-default remedies with respect to the collateral;

(3) That, by reason of the exercise, a transferee has acquired the rights of the debtor in the collateral; and

(4) The name and mailing address of the secured party, debtor, and transferee.

(b) **Effect of transfer statement.** A transfer statement entitles the transferee to the transfer of record of all rights of the debtor in the collateral specified in the statement in any official filing, recording, registration, or certificate-of-title system covering the collateral. If a transfer statement is presented with the applicable fee and request form to the official or office responsible for maintaining the system, the official or office shall:

(1) Accept the transfer statement;

(2) Promptly amend its records to reflect the transfer; and

(3) If applicable, issue a new appropriate certificate of title in the name of the transferee.

(c) **Transfer not a disposition; no relief of secured party's duties.** A transfer of the record or legal title to collateral to a secured party under subsection (b) of this section or otherwise is not of itself a disposition of collateral under this Article and does not of itself relieve the secured party of its duties under this Article.

CREDIT(S)

[2000 c 250 § 9A-619.]

UNIFORM COMMERCIAL CODE COMMENTS

　　<For UCC acknowledgments, see WA ST UCC Acknowledgments.>

2003 Main Volume

1. **Source.** New.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

West's RCWA **62A.9A-619**

2. **Transfer of Record or Legal Title.** Potential buyers of collateral that is covered by a certificate of title (e.g., an automobile) or is subject to a registration system (e.g., a copyright) typically require as a condition of their purchase that the certificate or registry reflect their ownership. In many cases, this condition can be met only with the consent of the record owner. If the record owner is the debtor and, as may be the case after the default, the debtor refuses to cooperate, the secured party may have great difficulty disposing of the collateral.

Subsection (b) provides a simple mechanism for obtaining record or legal title, for use primarily when other law does not provide one. Of course, use of this mechanism will not be effective to clear title to the extent that subsection (b) is preempted by federal law. Subsection (b) contemplates a transfer of record or legal title to a third party, following a secured party's exercise of its disposition or acceptance remedies under this Part, as well as a transfer by a debtor to a secured party prior to the secured party's exercise of those remedies. Under subsection (c), a transfer of record or legal title (under subsection (b) or under other law) to a secured party prior to the exercise of those remedies merely puts the secured party in a position to pass legal or record title to a transferee at foreclosure. A secured party who has obtained record or legal title retains its duties with respect to enforcement of its security interest, and the debtor retains its rights as well.

3. **Title-Clearing Systems Under Other Law.** Applicable non-UCC law (e.g., a certificate-of-title statute, federal registry rules, or the like) may provide a means by which the secured party may obtain or transfer record or legal title for the purpose of a disposition of the property under this Article. The mechanism provided by this section is in addition to any title-clearing provision under law other than this Article.

HISTORICAL AND STATUTORY NOTES

**Uniform Law**

This section is similar to § 9-619 of the Uniform Commercial Code. See Vol. 3 Uniform Laws Annotated, Master Edition or ULA Database on Westlaw.

LIBRARY REFERENCES

2003 Main Volume

    Secured Transactions ⟜235.
    Westlaw Topic No. 349A.
    C.J.S. Secured Transactions § 177.

West's RCWA **62A.9A-619**, WA ST **62A.9A-619**

    Current with all 2007 legislation including 1st Special Session

© 2007 Thomson/West.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 12

Meeting of SeeColor Board of Directors:  Board Meeting Minutes
October 8th, 2003  1:10 PM

Chairman (Craig Surbrook) calls Board meeting to order.

Duly noted that notice of Board meeting, as required by SeeColor's By-Laws, has
been given by the President (Ron LaForge).
> Board member Ed Dennis' meeting notice returned "undeliverable".
> Board member Peter Rettman's meeting notice returned
> "undeliverable". A voice mail notification of the meeting was also
> left on his office telephone. He did not return the call.

First item of business:  To determine the response by SeeColor Corporation to a
complaint filed by Paul Snypp demanding full payment on his secured note.

Discussion of three possible responses:
1. Agree to the claims in the complaint.
2. Contest any or all of the claims in the complaint.
3. No response.

Davis, Wright, Tremain (SeeColor's attorneys) have told us that Snypp's UCC
filing is valid and that the claims (in their view) are consistent with his signed
Agreement with SeeColor Corporation.

A motion was made and seconded to adopt the following resolution:

"It is hereby resolved that SeeColor's Board of Director's agrees with the validity
of the claims in the complaint "Snypp vs. SeeColor" and directs its Corporate
Counsel to stipulate to the Plaintiff that the Board agrees with all of the claims in
the complaint".

The motion was carried. Three yea votes:  Ron, Craig and Paul (Paul stated that
if he's not supposed to give a yea, then consider his vote an abstain).

There was no additional business to be discussed. The meeting was adjourned
at 1:30 PM.

Craig L. Surbrook, Chairman / Secretary

Ronald D. LaForge, President

Paul Snypp, Board Member

SIGNATURE(S) OF DEBTOR(S) (or assignor(s))
WASHINGTON-UCC

SIGNATURE(S) OF SECURED PARTY(IES) (or assignee(s))
FORM APPROVED FOR USC IN THE STATE OF WASHINGTON

# EXHIBIT 13



**Department of Licensing**

# License Query System

## License Detail                    <u>Help us improve this online service</u>

**License Information:**
**Entity Name:**      NEWSCOLOR LLC
**Firm Name:**        NEWSCOLOR
**License Type:**     Washington State Business
**Entity Type:**
**UBI:**              602619189    Business ID:001    Location ID:0001
**Status**            To check the status of this company, go to <u>Secretary of State.</u>.

**Location Address:**                        **Mailing Address:**
329 S SANANTONIO RD #8                       329 S SANANTONIO RD #8
LOSALTOS, CA, 94022                          LOSALTOS, CA, 94022

**Governing People:**
KAREN C BARR
PAUL SNYPP
RONALD D LAFORGE

**Information Current as of 12/06/2007 4:26AM Pacific Time**

[ New Search ]

This site is limited to searching for business and professional licenses issued by the Department of
Licensing or through the Master License Service. You may wish to click on OTHER LICENSES to
check for information on licenses issued by other agencies.

<u>Department of Licensing Home</u>    <u>Privacy Policy</u>    <u>Other Licenses</u>    <u>Contact Us</u>

Use of lists of individuals provided on this site for commercial purposes is prohibited under Chapter
42.56 of the Revised Code of Washington.

EXHIBIT 14

Division of Corporations - Online Services



## State of Delaware
### The Official Website for the First State



Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & Local Sites

State Directory | Help | Search Delaware |        | Citizen Services | Business Services | Visitor Info

**Department of State: Division of Corporations**

---

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions  View Search Results

---

## Entity Details

---

### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | **4251536** | Incorporation Date / Formation Date: | **11/14/2006** (mm/dd/yyyy) |
| Entity Name: | **SCREENTONE SYSTEMS CORPORATION** | | |
| Entity Kind: | **CORPORATION** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | **REGISTERED AGENT SOLUTIONS, INC.** | | |
| Address: | **32 W. LOOCKERMAN ST. SUITE 201** | | |
| City: | **DOVER** | County: | **KENT** |
| State: | **DE** | Postal Code: | **19904** |
| Phone: | **(302)674-8670** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information [ Submit ]

[ **Back to Entity Search** ]

To contact a Delaware Online Agent click here.

---

site map | about this site | contact us | translate | delaware.gov

# EXHIBIT 15

Division of Corporations - Online Services



## State of Delaware
### The Official Website for the First State

| Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & Local Sites |

| State Directory | Help | Search Delaware |                    Citizen Services | Business Services | Visitor Info

**Department of State: Division of Corporations**

---

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions   View Search Results

---

### Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | |
|---|---|---|
| File Number: | **3923893** | Incorporation Date / **02/09/2005**<br>Formation Date: (mm/dd/yyyy) |
| Entity Name: | **ACACIA PATENT ACQUISITION CORPORATION** | |
| Entity Kind: | **CORPORATION** | Entity Type: **GENERAL** |
| Residency: | **DOMESTIC** | State: **DE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **REGISTERED AGENT SOLUTIONS, INC.** | | |
| Address: | **32 W. LOOCKERMAN ST. SUITE 201** | | |
| City: | **DOVER** | County: | **KENT** |
| State: | **DE** | Postal Code: | **19904** |
| Phone: | **(302)674-8670** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status, Tax & History Information [ Submit ]

[ **Back to Entity Search** ]

To contact a Delaware Online Agent click here.

---

site map | about this site | contact us | translate | delaware.gov

# EXHIBIT 16

Division of Corporations - Online Services



## State of Delaware
### The Official Website for the First State

Visit the Governor  |  General Assembly  |  Courts  |  Other Elected Officials  |  Federal, State & Local Sites

State Directory  |  Help  |  Search Delaware :                     | Citizen Services  |  Business Services  |  Visitor Info

**Department of State: Division of Corporations**

| | |
|---|---|
| **HOME**<br>About Agency<br>Secretary's Letter<br>Newsroom<br>Frequent Questions<br>Related Links<br>Contact Us<br>Office Location<br><br>**SERVICES**<br>Pay Taxes<br>File UCC's<br>Delaware Laws Online<br>Name Reservation<br>General Information<br>Status<br>Validate Certificate<br><br>**INFORMATION**<br>Corporate Forms<br>Corporate Fees<br>UCC Forms and Fees<br>UCC Searches<br>Taxes<br>Expedited Services<br>Service of Process<br>Registered Agents<br>Get Corporate Status<br>Submitting a Request | Frequently Asked Questions  View Search Results |

### Entity Details

#### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| **File Number:** | 3057207 | Incorporation Date /<br>Formation Date: | **10/08/1999**<br>(mm/dd/yyyy) |
| **Entity Name:** | **ACACIA RESEARCH CORPORATION** | | |
| **Entity Kind:** | **CORPORATION** | Entity Type: | **GENERAL** |
| **Residency:** | **DOMESTIC** | State: | **DE** |

#### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | **REGISTERED AGENT SOLUTIONS, INC.** | | |
| Address: | **32 W. LOOCKERMAN ST. SUITE 201** | | |
| City: | **DOVER** | County: | **KENT** |
| State: | **DE** | Postal Code: | **19904** |
| Phone: | **(302)674-8670** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information  | Submit |

| Back to Entity Search |

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov